### CARPENTER v. THE AMERICAN ACCIDENT CO.

1. CAUSE OF ACTION—CONTRACT—JURISDICTION.—CODE.—A cause of action on a contract with a foreign corporation arises at the place of performance, upon refusal of performance there, and the court at such place has jurisdiction of the action based on such delict, whether the parties reside in its jurisdiction or not. Code, sec. 423.

2. NONSUIT—WAIVER—DEFENSE.—It is proper to refuse a nonsuit to a defendant insurance company upon the ground that sworn proof of. death was not forwarded within thirty days, because that is a matter of defense, and the plaintiff has the right to show waiver of such condition, if he can.

3. CHARGE—CONTRIBUTORY NEGLIGENCE.—The charge of the Circuit Judge upon the question of contributory negligence in this case, taken as a whole, in view of the issues involved, is not erroneous.

4. CONTRIBUTORY NEGLIGENCE.—If the unnecessary danger be such as a reasonable, prudent man ought to have known, and he voluntarily goes into it, it would be voluntary exposure to unnecessary danger.

5. AGENT—CLASSIFICATION—ESTOPPEL.—An insurance company cannot plead wrong classification, if its agent knew the facts and suggested the answers to the questions, and in so doing acted within the scope of the agency.

6. EXCEPTION.—An exception imputing error to the Circuit Judge "in charging the jury in respect to matters of fact, whereby he indicates to the jury his opinion, that the plaintiff was entitled to a verdict," is too general for consideration.

Before BENET, J.  Chester, S. C., March, 1895.  Affirmed.

Action by Simon P. Carpenter and James S. C. Carpenter, as administrators of the estate of Charles W. Carpenter, against The American Accident Company, to recover $2,500, the amount for which the defendant had insured Charles W. Carpenter against death by external, violent, and accidental means.  On the 19th February, 1894, the deceased was kicked in the head by a mule, which he slapped on the rump with his hand, holding a lighted lantern in the other.  He died February 22, 1894.  Judgment for plaintiff.  Defendant appeals.

*Mr. Geo. W. Gage,* for appellant.

*Messrs. Glenn & McFadden,* contra.

April 16, 1896.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  This is a suit upon an accident policy of insurance for $2,500, issued by the defendant company to Charles W. Carpenter, late of Chester, S. C. The defendant is a foreign corporation, incorporated under the laws of Kentucky, did business in accident insurance in this State, and had local agents at Chester, S. C.  The policy insured "C. W. Carpenter, of Chester, S. C., for three calendar months, beginning at noon on the 12th day of February, 1894, * * * against bodily injuries sustained through external, violent, and accidental means," and promised, "upon satisfactory proof of same, to pay the insured, if he survives, such sum as provided on the back hereof, or if death results within ninety days, as provided, will pay $2,500 to his legal representatives."  The policy further provided, that "this insurance does not cover * * * accidental injuries or death resulting from or caused by * * * voluntary exposure to unnecessary danger, &c."  The policy was dated, "Louisville, Ky., 12th day of February, 1894."  The insured was classed in "Division D., $2,500." It seems that in the table of indemnity, adopted by this

company, the divisions are A, B, C, D, E, and so on, and the corresponding scale of insurance are $5,000, $4,000, $3,000, $2,500, $2,000, and so on down. The classification for persons connected with livery stables seems to be as follows: Livery stable clerk, "D;" book-keeper, office duties only, "A;" Proprietor, office duties only, "A;" keeper, superintendent, "D;" keeper, working, "E." The insured in his application stated his "kind of business" as "livery stable keeper, superintendent;" "occupation," "proprietor of livery stable;" "duties required fully described;" "superintendent." The evidence tended to show that the policy was delivered to and accepted by the insured at Chester, S. C., his place of residence, on the morning of the 19th of February, 1894. On the evening of that day, after dusk or dark, Carpenter was kicked on the head by a mule, from which injury he died, February 22d, 1894. Plaintiffs applied for letters of administration February 27th, 1894, and received letters March 19th, 1894, from the Probate Court of Chester County.

We cannot ascertain from the "Case" when this action was commenced, but it appears to have been tried March, 1895. The defendant appeared generally in the case, and answered on its merits. The complaint contained the allegations appropriate in such a case. We note specially that in paragraph two the complaint alleged that the policy sued on was payable to the legal representatives of Charles W. Carpenter, "*At Chester, S. C.*" The answer not only does not deny this, but expressly admits that the defendants mailed a policy like that described in the complaint to its agents at Chester, S. C., on February 12th, 1894. The answer raised an issue as to the delivery of the policy, alleging on information that it "was not delivered to Charles W. Carpenter before the alleged accident of 19th February, 1894." Three affirmative defences are also set up, viz: (1) That the policy was vitiated by the fraud of the insured in not stating his true occupation, having represented himself as proprietor of a livery stable, whereas

he also occupied himself in selling and buying live stock, and handling the same in person, thus subjecting himself to extraordinary risks and that said Carpenter met the alleged accident by engaging in the occupation of a hostler, and that his true classification was in division E, $2,000." (2) "That the said Charles W. Carpenter met his death by voluntarily exposing himself to unnecessary danger, and by gross contributory negligence, out of the line of his occupation, to wit: by the reckless and unnecessary handling of a mule in the night time, known to him to be ill-tempered and dangerous." (3) "That the policy was forfeited by failure to furnish positive sworn proof of accidental death to the company within thirty days from date of death."

The case was tried before Judge Benet and a jury. On the close of plaintiff's testimony, defendant's counsel moved for a nonsuit on three grounds, as follows: (1) That plaintiffs are non-residents. (2) That the cause of action did not arise in this State. (3) That no proof of death was furnished within thirty days. The Circuit Judge overruled the motion for a nonsuit, but declined to pass on the question of residence, on the ground that it was a question of fact for the jury. The trial resulted in a verdict for the plaintiffs for $2,500.

From the judgment defendant appeals. The first exception is: (1) "Because his Honor, the Circuit Judge, erred in not holding that the Court of Common Pleas for said county and State was without jurisdiction to try this cause, it appearing from the testimony that the plaintiffs were not residents of the said State, and that the cause of action did not arise in said State, and that the subject of the action was not situated in the said State, and that defendant was a corporation, created under and by the laws of another State, to wit: the State of Kentucky." We think it clear that the Circuit Court had jurisdiction, on the ground that the cause of action arose in this State. Sec. 423 of the Code of Procedure provides as follows: "An action against a corporation, created by or under the

laws of any other State, government or country, may be brought in the Circuit Court: (1) by any resident of this State, for any cause of action; (2) by a plaintiff, not a resident of this State, when the cause of action shall have arisen, or the subject of the action shall be situated, within this State." As stated above, by the pleadings, it appeared that the policy sued on was payable at Chester, in this State. A cause of action on a contract arises at the place of performance, for there the delict or wrong, which is the refusal to perform, takes place. Accordingly, in *Rogers* v. *Mutual Endowment Association*, 17 S. C., 406, this Court dismissed an action against a foreign corporation, because the policy or indemnity was payable in another State, on the ground that the cause of action arose in the State where the alleged contract was to be performed. Said the Court, "the delict, which created the cause of action, was in refusing to pay the mortuary benefits, according to the tables of the association, all which, by the contract, was to be done in the office in Baltimore." The same principle controlled the Court in *Curnow* v. *Ins. Company*, 37 S. C., 411, but it was reached in a different way. In the case first mentioned, it expressly appeared that the place of performance was Baltimore; in the second case mentioned, it did not appear directly where was the place of performance, but it did appear where the contract was made, namely: in South Carolina, and the Court held, that in the absence of anything indicating the contrary, the place of the making of a contract is presumably that of its performance. So that the final test as to where an action on a contract arises, is to ascertain the place where it is to be performed. It appearing, therefore, in this case, as a verity, that Chester, South Carolina, is the place where the policy sued on is payable, the question of jurisdiction is conclusively settled by that fact alone, against the appellant. This being so, ii is wholly immaterial where the plaintiffs reside, where the contract was made, or where the subject of the action is situated. Exception one is overruled.

35—46

The second exception is: (2) "Because his Honor, the Circuit Judge, erred in not granting the defendant a nonsuit, it having appeared, from the plaintiff's direct testimony, that no sworn proof of the death of Charles W. Carpenter was made to the defendant company within thirty days thereafter, although the necessity for such proof was, by their testimony, known to the plaintiff." The forfeiture claimed by reason of the alleged failure to file sworn proof of death, is purely a matter of defense, and even though the fact alleged may have been brought out during examination of plaintiffs' witness, yet a nonsuit would be improper, because the plaintiffs have the right to show a waiver thereof, if they could. See *Samples* v. *Insurance Company*, 42 S. C., 14; *Copeland* v. *Weston As. Co.*, 43 S. C., 26. This exception must, therefore, be overruled.

The third exception, relating to the delivery of the policy, was abandoned.

The fourth exception alleged: (4) "That his Honor erred in charging the jury that voluntary exposure to unnecessary danger meant peril actually known to a party, or words to that effect." What the Circuit Judge really charged was this, in response to plaintiffs' request to charge, "the question of voluntary exposure to unnecessary danger is a question of fact for the jury under instructions from the Court." "That is true. In connection with that, I charge you that voluntary exposure to unnecessary danger also implies knowledge on the part of the deceased of the existence of the danger. By which I mean that, when you come to consider the nature of the accident, how it happened, why it happened, no matter what the testimony may be as to the character or the nature of the mule, Jude, you cannot hold that the deceased voluntarily exposed himself to unnecessary danger, unless you are satisfied that he knew the dangerous kicking qualities of the mule, Jude. Unless that knowledge is brought home to him, you cannot hold that he was voluntarily exposing himself to unnecessary danger. The danger must be known to

the person exposing himself. To be voluntary exposure to unnecessary danger, there must be some reasonable cause to apprehend danger, and not a mere possibility of danger." The defendant's counsel requested the Judge to charge as follows: "If you find that said Carpenter came to his death as alleged in the complaint, and if you find that said accident resulted from, or was caused by, his voluntary exposure to unnecessary danger, then the plaintiffs cannot recover in this action." The Judge so charged. Then he went on to explain, and concluded, "if the deceased knew that Jude was a dangerous and ill tempered mule, addicted to kicking, and yet he stood near her hind feet and slapped her on the rump or hip in a way calculated to provoke her to kick, it is for you to say, then, whether or not he exposed himself voluntarily to unnecessary danger. But the question is not whether Jude, the mule, was a kicking mule, but the question is, did Charles Carpenter know it?" This charge must be considered in the light of the issue before the jury, which his Honor, doubtless, had in mind. The answer of the defendant, in its second affirmative defense above stated, alleged that Carpenter met his death "by the reckless and unnecessary handling of a mule in the night time, *known* to him to be ill tempered and dangerous." Construed in connection with the issue before the jury, we cannot say that the charge was erroneous. We do not mean to say, nor did the Circuit Judge charge, that *actual* knowledge of the danger is always essential to constitute a voluntary exposure to unnecessary danger. Reckless, wanton conduct, short of actual knowledge of danger, might, under certain circumstances, be characterized as a voluntary exposure to unnecessary danger. If the unnecessary danger be such as a reasonable, prudent man *ought to have known it,* and he voluntarily goes into it, it would be a voluntary exposure to unnecessary danger. The unnecessary danger must be known or obvious, such as a prudent man *should* know. It would be very hard to prove to a jury what a dead man once actually knew, but it would not

be so difficult to prove circumstances, from which a jury might infer that he knew or ought to have known. But there was no request that the Circuit Judge should make his charge more full and explicit than the issue presented required. Furthermore, he told the jury that, "to be voluntary exposure to unnecessary danger, there must be some reasonable cause to apprehend danger; and, in another part of his charge, in response to a request from defendant's counsel, he said to the jury, "if you find that Carpenter, by a *failure to exercise ordinary care* contributed to said accident, then plaintiffs cannot recover, this was modified so as to require that the contributory negligence must be the proximate cause of the accident. This made the insured's *negligence*, provided it was the proximate cause of the accident, a defense. Taking the charge as a whole, on this point, plaintiff has nothing to complain of, and we cannot say it was erroneous, under the circumstances.

The fifth exception is: "(5) Because his Honor erred in charging the jury, that defendant was estopped to deny a wrongful classification of Charles W. Carpenter made by his agents." The charge of his Honor on this point was as follows: "An insurance company can not deny liability on a policy on the ground of misrepresentation and misstatements in the application, if the evidence shows that the application was filled out by the agents of the company, and that they knew all the facts in the case, that the answers to the questions in the application were suggested by the agents themselves." To this request of plaintiff's counsel his Honor said: "I charge you that is law, for a very good reason, which I may briefly state. That the principal is bound by the acts of his agents, when that agent is acting within the scope of his agency; and, if it is within the scope of an agency of an insurance company to fill up applications, suggest questions and answers, and if he knows the facts with regard to the individual applying for the insurance, then the insurance company is bound by his acts when he does that, and is estopped from deny-

ing that what the agent did was their work, because what the agent does is the act of the principal, within the scope of his agency." He further charged in response to plaintiff's request, "An insurance company cannot plead wrong classification, if the evidence shows that their agents had a full knowledge of the facts, and that they made the classification." "I charge you that, for the same reason, if the evidence shows you that Hamilton, one of the firm of Carpenter & Hamilton, agents of the company, if they were such agents, if the evidence shows that he had a full knowledge of the facts with regard to the occupation, the nature of the occupation, of the deceased, Charles Carpenter, and made the classification accordingly, then I charge you, that the insurance company is bound by the act of its agent, and cannot question the classification. If that is the evidence, it is for you to say whether that is proof of anything or not." We find no error in the charge on this point.

The sixth exception is: "(6) Because his Honor erred in charging the jury in respect to matters of fact, whereby he indicated to the jury his opinion that the plaintiffs were entitled to a verdict." This exception is too general, and cannot be considered. In the case of *State* v. *Milling*, 35 S. C., 26, an exception, "For that his Honor erred in charging the jury upon matters of fact, by indicating plainly the opinion of the Court that the prisoner should be convicted, so as to bias their judgment, and influence and control the verdict of the jury against the prisoner," was not noticed, because too general. This rule should be observed. It is convenient and important that opposing counsel may know the particular points of controversy, so as to prepare for them, and that the time and attention of the Court may be applied to the solution of specific questions, and so the orderly and systematic administration of the law will be promoted by the observance of this rule.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.