349 F.2d 60
 7 A.L.R.Fed. 99
 Marie L. SZANTAY, ancillary administratrix c.t.a. of the
Estate of Elmer D. Szantay, Appellee,
v.
BEECH AIRCRAFT CORPORATION, Appellant.
Ova N. WEIGER, Mother of S. Wayne Weiger, Deceased, for her
use and benefit and for the use and benefit of Merle Weiger,
brother of the Deceased S. Wayne Weiger, Ruby C. Weiger
Ewing and Winona W. Weiger Sausser, sisters of the Deceased
S. Wayne Weiger, Appellee,
v.
BEECH AIRCRAFT CORPORATION, Appellant.
Margaret CLEMENS, Surviving Widow of James J. Clemens,
Deceased, for her use and benefit and for the use and
benefit of John R. Clemens, James B. Clemens, Brian P.
Clemens, and Margaret M. Clemens, surviving minor children
of James J. Clemens, Deceased, Appellee,
v.
BEECH AIRCRAFT CORPORATION, Appellant.
 Nos. 9927-9929.
 United States Court of Appeals Fourth Circuit.
 Argued May 31, 1965.
Decided July 1, 1965.
 
 E. W. Mullins, Columbia, S.C. (Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on the brief), for appellant.
 David W. Robinson, II, Columbia, S.C. (Robinson, McFadden & Moore, and Henry Hammer, Columbia, S.C., on the brief), for appellees.
 Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and BARKSDALE, District Judge.
 SOBELOFF, Circuit Judge.
 
 
 1
 These are interlocutory appeals, pursuant to 28 U.S.C.A. 1292(b). Beech Aircraft Corporation appeals from the denial of its motion to quash the service of process made upon it and to dismiss the complaints for want of jurisdiction.
 
 
 2
 The complaints alleged that Elmer Szantay purchased a Beech aircraft in Nebraska and flew it to Miami, Florida, and thence to Columbia, South Carolina, where he arrived on the evening of March 31, 1962. During the stopover the plane was serviced by the Dixie Aviation Co., a South Carolina corporation. Szantay and his passengers left Columbia the next morning bound for Chicago but the plane travelled only as far as Tennessee where it crashed, killing all of its occupants.
 
 
 3
 Companion wrongful death actions were brought by the personal representatives of the victims, all citizens of Illinois, against Dixie and Beech in the United States District Court for the Eastern District of South Carolina. The complaints charged that the deaths were caused by Beech's negligent manufacture and design of the aircraft, and Dixie's negligent servicing.
 
 
 4
 Beech is incorporated under the laws of Delaware and has its principal place of business in Kansas. The District Judge found that Beech had sufficient contacts with South Carolina through its local dealer to permit service on it under South Carolina law pursuant to Rule 4(d)(7), Fed.R.Civ.P. The evidence amply justifies the ruling.
 
 
 5
 Service of process was undertaken pursuant to section 10-423, Code of Laws of South Carolina (1962), which provides that effective service may be obtained on a foreign corporation by serving '* * * any * * * agent thereof' in South Carolina. We affirm the District Court's holding, 237 F.Supp. 393, that the extensive control and supervision exercised by Beech over its dealer, by reason of which Beech is deemed to have had sufficient contacts with South Carolina, is sufficient to constitute that dealer the agent of Beech for service of process.[1]
 
 
 6
 The plaintiffs being citizens of Illinois, the defendant Beech being a corporation of Delaware and Dixie of South Carolina, and the amount in controversy exceeding $10,000, all the prerequisites of federal diversity jurisdiction specified in the Constitution and implementing legislation[2] are satisfied. It is conceded that all federal venue requirements are satisfied.[3]
 
 
 7
 Beech, however, moved for dismissal on the ground that a federal diversity court sitting in South Carolina lacks jurisdiction over Beech because of South Carolina's 'door-closing' statute, section 10-214, Code of Laws of South Carolina (1962). That statute provides that:
 
 
 8
 'An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court: (1) By any resident of this State for any cause of action; or (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.'
 
 
 9
 It is conceded that South Carolina state courts do not have jurisdiction over a suit brought by a nonresident against a foreign corporation on a foreign cause of action. The principal question posed is whether this state rule restricts the jurisdiction of the federal courts in South Carolina in diversity cases.
 
 
 10
 For many years it was generally understood that federal jurisdiction was not affected by state statutes limiting the jurisdiction of their own courts.[4] In recent years, however, this absolute approach has been modified. The change may be said to have begun with Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct 817, 82 L.Ed. 1188 (1938), when the Supreme Court decided that in diversity cases federal courts must apply state substantive law, decisional as well as statutory, in the adjudication of statecreated rights. This doctrine was later expanded when the Court held that state law must be applied whenever such application would give rise to a different result, the so-called 'outcome-determinative' rule. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The formulation of this test was shortly followed by two cases of particular relevance to the issue before us.
 
 
 11
 In 1947 the Court held that a Virginia plaintiff could not sue a North Carolina defendant for a deficiency judgment in a North Carolina federal court because of North Carolina's express statutory policy against such actions. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Two years later it held that a Tennessee corporate plaintiff could not sue a Mississippi defendant on a Mississippi cause of action in a Mississippi federal court when that state would not allow the corporation to sue in its courts because of its failure to register as a foreign corporation doing business there. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). The opinion declared that a federal court cannot enforce a statecreated created right when that state provides no remedy.
 
 
 12
 A decade later in a case arising in this circuit, the Supreme Court reconsidered the meaning of Erie and refined the 'outcome-determinative' test. The Court was called upon to decide the effect to be given to a South Carolina procedural requirement that the judge, rather than the jury, shall determine whether a defendant employer is entitled to the immunity from suit conferred by the South Carolina Workmen's Compensation Act. Such a procedure was in conflict with the federal practice allocating the function of determining such issues to the jury. The Court held that a state procedural rule must be followed if it is bound up with the state-created rights and obligations; but if it is a mere form or mode of enforcing rights its application by a federal diversity court will hinge on a broader inquiry. The federal court should conform in such cases, 'as near as may be-- in the absence of other considerations-- to state rules' when they may substantially affect the outcome of the litigation. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). The spirit of these decisions makes it appropriate for a court attempting to resolve a federalstate conflict in a diversity case to undertake the following analysis:
 
 
 13
 1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.
 
 
 14
 2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.[5]
 
 
 15
 3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.
 
 
 16
 A like test was recently applied in Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963). There the court was concerned with the extent to which state or federal rules should control in the service of process on foreign corporations in diversity cases. The Second Circuit, speaking through Judge Friendly, decided first that the state service of process statute was not substantive, nor was it a procedure intimately bound up with the state right being enforced. The decision implied that this exhausted the constitutionally compulsive aspects of the Erie doctrine. The court then ruled that state procedure should be adopted in that case because there were no affirmative countervailing federal considerations. Judge Clark agreed that the constitutionally compulsive aspects of Erie were not there controlling but he dissented upon his view that a countervailing federal policy did exist. Supra, 320 F.2d at 242.
 
 
 17
 In the case before us the parties are in agreement that the South Carolina 'door-closing' statute is procedural. And, as the right asserted is one arising under the laws of Tennessee, it cannot be contended that the South Carolina rule is intimately bound up with that right. It follows from this that the constitutional compulsions of the Erie doctrine are not applicable here.
 
 
 18
 The conclusion is fortified by the recent decision in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (April 26, 1965). There it is pointed out that the 'outcome-determinative' and 'forum-shopping' concepts are intended to prevent an 'inequitable administration of the laws' working unfair discrimination against citizens of the forum state. Since the citizen is limited to the law as applied by the state court when he sues another citizen of his state or when he is sued by a citizen of another state in the state court, it is reasoned that when a citizen of a foreign state sues in the federal court of the defendant's state, state law should likewise normally be applied. Here no contention is made that rejection of the 'door-closing' statute will result in a discrimination against South Carolina citizens. South Carolina plaintiffs will remain jurisdictionally free to assert a foreign cause of action against a foreign defendant in either a state or federal court in South Carolina regardless of the decision in this case.[6] At the heart of Erie was the intention to prevent different legal treatment of parties merely because of a variation in the residence of their opponent. See Note, 56 Yale L.J. 1037, 1045 (1947). The adoption in this case of the South Carolina 'door-closing' statute would result in just such a variation because the relief available in the federal court to the foreign residents, in this case the Illinois plaintiffs, would then turn on the state of incorporation of the defendant.
 
 
 19
 As above indicated, however, this analysis does not exhaust the question. It is necessary to go on and inquire whether the South Carolina rule embodies important policies that would be frustrated by the application of a different federal jurisdictional rule and, if so, is this policy to be overridden because of a stronger federal policy?
 
 
 20
 We are inhibited in our search for the state policy underlying the South Carolina 'door-closing' statute by the unavailability of any legislative history. Furthermore, no South Carolina state court has, to our knowledge, shed any light on the problem. The language of the statute could support several possible explanations. It could be regarded as a statutory formulation of the doctrine of forum non conveniens. If so, the restriction would not be binding on the federal court since federal cognizance of the case would in no way frustrate state policy.[7] A related consideration, to be treated in the same manner, is the suggested possibility that the statute was designed to relieve docket congestion, though there is nothing to indicate that this was a problem in 1870 when the statute was passed.
 
 
 21
 Beech tenders the hypothesis that the legislation was designed to encourage foreign corporations to do business in South Carolina. This explanation is attenuated by the fact that the same session of the legislature provided, as heretofore noted, that any South Carolina agent of a foreign corporation was to be considered an agent for the service of process no matter where the cause of action arose and irrespective of the plaintiff's residence. See section 10-423, Code of Laws of South Carolina (1962). Furthermore, South Carolina qualification laws indicate that foreign corporations are to be given a status generally comparable to that of domestic corporations. See section 12-705, Code of Laws of South Carolina (1962). The most that can be said for Beech's argument is that it demonstrates that the state's reason for enacting its 'door-closing' statute is uncertain.
 
 
 22
 The countervailing federal considerations, however, are explicit, and they are numerous. The most fundamental is that expressed in the constitutional extension of subject-matter jurisdiction to the federal courts in suits between citizens of different states. U.S.Const. Art. III, 2. The purpose of this jurisdictional grant was to avoid discrimination against nonresidents. See The Federalist No. 80 (Hamilton); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat. 304) 304, 347, 4 L.Ed. 97 (1816). The South Carolina 'door-closing' statute permits its residents to sue foreign corporations on foreign causes of action yet denies this privilege to nonresidents. While such discrimination may not be unconstitutional,[8] it is the role of diversity jurisdiction, as pointed out for this court by Judge Haynsworth, to make certain that:
 
 
 23
 '(a) nonresident litigant in resorting to the federal diversity jurisdiction should obtain the same relief a resident litigent asserting the same cause of action would receive in the state courts.' Markham v. City of Newport News, 292 F.2d 711, 718 (4th Cir. 1961).[9]
 
 
 24
 A further federal consideration, likewise expressed in the Constitution itself, is that underlying the Full Faith and Credit Clause. U.S.Const. Art. IV, 1. That clause expresses a national interest 'looking toward maximum enforcement in each state of the obligations or rights created or recognized by the statutes of sister states.' Hughes v. Fetter, 341 U.S. 609, 612, 71 S.Ct. 980, 982, 95 L.Ed. 1212 (1951). While the South Carolina 'door-closing' statute may not directly violate the demands of this constitutional principle,[10] it is contrary to its implicit policy in that it prevents enforcement of the Tennessee Wrongful Death Action in the South Carolina state courts.[11]
 
 
 25
 The plaintiffs' choice of a South Carolina forum was not frivolous. One of the defendants, Dixie, could be served only in that state. It is a federal policy to encourage efficient joinder in multi-party actions,[12] and at least one commentator has suggested that this federal interest is sufficient to override an explicit conflicting state policy. Note, 77 Harv.L.Rev. 559 (1964). Furthermore, if the plaintiffs had brought suit against Beech alone in the federal forum where the accident occurred, the District Judge there would have been free to transfer the case to a South Carolina District Court pursuant to the federal doctrine of forum non conveniens, 28 U.S.C.A. 1404(a), even though South Carolina law denies the plaintiffs access to its state courts. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).
 
 
 26
 Our case is not controlled by Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), or Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), referred to above. Each of these decisions paid deference to a clear state policy that would have been frustrated by permitting suit in a federal court. In Angel North Carolina forbade any deficiency judgments, thereby expressing a clear policy in favor of debtors and against enforcement by anyone of such causes of action. In Woods Mississippi's clear purpose was to encourage foreign corporations doing business in Mississippi to register. Furthermore, the cause of action sued on in Woods was created by the forum state, so the measure of it was to be found in the law of the state.[13] See Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Neither case involved discrimination against nonresidents, nor were there multiple defendants who could be sued only in the contested forum.
 
 
 27
 South Carolina has no policy against the particular plaintiffs, as Mississippi had against nonregistered foreign corporations in Woods; nor does it discourage the type of action, as North Carolina did in respect to deficiency judgments in Angel. The superficiality of the South Carolina policy is demonstrated in this case by the fact that the plaintiffs could have gained access to a South Carolina court by simply qualifying as administrators under South Carolina law.
 
 
 28
 Therefore we hold that the conflict here between federal and state policies, if in fact one exists, is to be resolved in favor of the federal interest in providing a convenient forum for the adjudication of the plaintiffs' actions.
 
 
 29
 Affirmed.
 
 
 
 [1]
 Calhoun Mills v. Black Diamond Collieries, 112 S.C. 332, 99 S.E. 821 (1919); McNeill v. Electric Storage Battery Co., 109 S.C. 326, 96 S.E. 134 (1918); see Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 332 F.2d 135 (5th Cir.), cert. denied, 379 U.S. 915, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964)
 2 U.S.Const. Art. III, 2; 28 U.S.C.A. 1332.
 
 
 [3]
 28 U.S.C.A. 1391
 
 
 [4]
 See David Lupton's Sons Co. v. Automobile Club of America, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912); Barrow Steamship Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898)
 
 
 [5]
 Such was the case in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)
 
 
 [6]
 Of course, in the rare case where the plaintiff is a nonresident South Carolina citizen a rejection of the state statute would permit him to bring suit in a South Carolina federal court but not in a state court, the same treatment sought by the nonresident noncitizen
 
 
 [7]
 Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Headrick v. Atchison, T. & S.F. Ry. Co., 182 F.2d 305 (10th Cir. 1950); see Parsons v. Chesapeake & O.R. Co., 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963)
 
 
 [8]
 'There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned.' Douglas v. New York, New Haven R. Co., 279 U.S. 377, 387, 49 S.Ct. 355, 356, 73 L.Ed. 747 (1929)
 
 
 [9]
 'State rules which are fashioned especially for nonresidents are too likely to bear the imprint of hometown prejudices to be entitled to willy-nilly application in courts which should serve as bulwarks against such prejudices.' Carrington, 'The Modern Utility of Quasi in Rem Jurisdiction,' 76 Harv.L.Rev. 303, 319 (1962)
 
 
 [10]
 See First National Bank of Chicago v. United Air Lines, Inc., 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441 (1952)
 
 
 [11]
 It is proper to consider also the duty imposed on federal courts in diversity cases to hear and adjudicate the issues before it, Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); see County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)
 
 
 [12]
 See 28 U.S.C.A. 1335 (Interpleader); Rules 18-21, 23, Fed.R.Civ.P
 
 
 [13]
 The holding in Hanna v. Plumer, that 'the broad command of Erie was * * * identical to that of the Enabling Act; federal courts are to apply state substantive law and federal procedural law,' 380 U.S. 460, 85 S.Ct. 1136, 1141 (April 26, 1965), makes relevant a reference to earlier Supreme Court cases dealing with the permissible scope of the federal rules. Rule 4(f), permitting service of process anywhere in the state, was upheld since it did not 'operate to abridge, enlarge or modify the rules of decision by which that court will adjudicate its rights.' Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 446, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946). Such is the case here. The federal jurisdictional and venue statutes do not affect the rules of decision by which the parties' rights will be adjudicated; they only determine the forum