·CALIFORNIA BUFFALO, a sole proprietorship, Plaintiff,

v.

GLENNON–BITTAN GROUP, INC., a North Carolina Corporation, Defendant.

BRIGHT TEXTILE MILLS LIMITED, Plaintiff,

v.

GLENNON–BITTAN GROUP, INC., Defendant.

Civ. A. Nos. 2:95–2621–18, 2:95–3644–18.

United States District Court, D. South Carolina, Charleston Division.

Jan. 9, 1996.

---

John Hughes Cooper, Sullivan's Island, SC, for plaintiffs.

Michael S. Seekings, Charleston, SC, for defendant.

### ORDER

NORTON, District Judge.

These actions are before the court on its *sua sponte* inquiry as to whether the court has subject matter jurisdiction over these cases. The court finds that S.C.Code Ann. § 15–5–150, South Carolina's "door closing statute," bars both actions.

## I. CALIFORNIA BUFFALO v. GLENNON–BITTAN

### A. BACKGROUND

The Plaintiff California Buffalo, a California sole proprietorship, brought this action against the Defendant, a North Carolina corporation, alleging breach of contract for the sale of cotton garments. The parties' contract provided that the Plaintiff would import the cotton garments from a Pakistani manufacturer to the port of Charleston, South Carolina, for ultimate delivery to Defendant's place of business in Farmville, North Carolina.

When Plaintiff filed this complaint, the first of three scheduled shipments had arrived in Charleston, and the bill of lading had been delivered to Defendant's agent in Charleston, but Defendant had cancelled the letter of credit it opened in Plaintiff's name as payment for those goods. Plaintiff attached the goods located at the office of Defendant's agent in Charleston. Defendant posted bond, and Plaintiff secured an order releasing Defendant's attached goods. Since then, the first shipment and a second shipment of the cotton garments have been delivered to the Defendant's office in Farmville, and have been paid for pursuant to the terms of a settlement agreement entered into by the parties. The remaining shipment of goods was delivered to Farmville, but the parties dispute whether the Defendant is obligated to pay for it under the terms of the settlement agreement.

### B. DISCUSSION

#### (1) Subject Matter Jurisdiction

This court has diversity jurisdiction over this case because the matter in controversy exceeds $50,000 and is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). However, diversity jurisdiction is limited in some instances by South Carolina law. The "door closing statute" represents South Carolina's choice not to extend the bounds of its jurisdiction over cases brought by foreign corporations unless the cause of action arose in South Carolina, or the subject of the action is situated in South Carolina. S.C.Code Ann. § 15–5–150. A

federal court exercising diversity jurisdiction in South Carolina must apply this statute unless "affirmative countervailing federal considerations" override the application of the statute. *Szantay v. Beech Aircraft Corp.,* 349 F.2d 60 (4th Cir.1965); *see also Proctor & Schwartz, Inc. v. Rollins,* 634 F.2d 738 (4th Cir.1980); *Collins v. R.J. Reynolds Tobacco Co.,* 901 F.Supp. 1038, 1042 (D.S.C. 1995).

There are no countervailing federal considerations which prevent application of the door closing statute in this case. In *Szantay,* where one of the defendants could only be served and joined in South Carolina, the court found that comity did not require the district court to divest itself of jurisdiction even though the case was brought by a foreign corporation. In that case, federal considerations outweighed the state's interest in closing its door.

The Fourth Circuit Court of Appeals has since limited the need to apply *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action. *Proctor & Schwartz,* 634 F.2d at 740 (noting that the crucial question when applying 15–5–150 is whether South Carolina might be the only state in which a party could join multiple defendants); *see Collins,* 901 F.Supp. 1038, 1043 n. 2 (distinguishing *Szantay* because the plaintiff could have brought suit against the defendants in Georgia or other jurisdictions where they have sufficient minimum contacts); *see also Grimsley v. United Engineers and Constructors, Inc.,* 818 F.Supp. 147, 148 (D.S.C.1993). Here, Plaintiff could have brought this action in North Carolina, the state of Defendant's incorporation. No "countervailing federal considerations" outweigh application of the statute.

### (2) Application Of Door Closing Statute

This court must therefore decide whether South Carolina would choose to close the doors of its courts to this action. Because neither party is a citizen of South Carolina, 15–5–150 allows this court to exercise jurisdiction only if (1) the cause of action arose in South Carolina, or (2) the subject of the action is situated in South Carolina. S.C.Code Ann. § 15–5–150.

### (a) Cause of Action Arising Within South Carolina

■ A cause of action for breach of contract arises in this state when a party breaches a contract made in this state or to be performed in this state. *Recreonics Corp. v. Aqua Pools, Inc.,* 638 F.Supp. 754 (D.S.C. 1986); *Carpenter v. American Accident Co.,* 46 S.C. 541, 24 S.E. 500 (1896). It is undisputed that the contract upon which this suit was brought was not made in South Carolina, but the parties dispute whether the contract was to be "performed" in this state.

■ Plaintiff relies on *Recreonics* to argue that because the goods which are the subject of the contract were to be delivered to the port of Charleston, South Carolina, this state is the place of performance for purposes of § 15–5–150. In *Recreonics,* the defendant North Carolina corporation agreed to purchase from the plaintiff Indiana corporation swimming pool materials to be delivered to Myrtle Beach Air Force Base in South Carolina. The court found that, because the materials were to be delivered in South Carolina, performance was to be rendered in South Carolina. Defendant's anticipatory repudiation of the contract thus had its effect in South Carolina, and the door closing statute did not preclude the action. *Recreonics,* 638 F.Supp. at 757–58.

Defendant argues that this case is distinguishable because here, the ultimate place of performance is not South Carolina, but Defendant's place of business in North Carolina. Plaintiff does not dispute the fact that the goods were ultimately to be delivered to North Carolina, but points to the bills of lading identifying Charleston as the port of delivery. This court agrees with the Defendant that South Carolina is not the place of performance. Unlike in *Recreonics,* where the contract specified delivery to a location in South Carolina, the parties' contract in this case specified delivery in North Carolina. South Carolina was merely the port of entry for the goods. When Defendant allegedly repudiated the contract, the "wrong" was committed in North Carolina rather than in

South Carolina. The cause of action did not arise in this state.

### (b) Subject of the Action in South Carolina

When a cause of action brought by a foreign corporation does not arise in South Carolina, the door closing statute bars the suit unless the "subject of the action shall be situated within this State." S.C.Code Ann. § 15–5–150(2). South Carolina recognizes two approaches to defining the "subject of the action." First, the subject of the action has been defined as the specific property involved in the suit. *Salway v. Maryland Casualty Co.*, 176 S.C. 215, 179 S.E. 787, 790 (1935). Alternatively, the subject of the action is the plaintiff's main primary right which has allegedly been violated by the defendant, for which the plaintiff seeks redress. *Coastal Mall, Inc. v. Askins*, 265 S.C. 307, 217 S.E.2d 725, 727 (1975); *Knight v. Fidelity & Casualty Co.*, 184 S.C. 362, 192 S.E. 558 (1934). In the context of this case, the subject of the action is either the goods (the "specific property") or the contract itself (the "primary right").

This court finds that the proper approach in this case is the "primary right" approach, and that the "subject of the action" in the instant case is the contract. In *Salway* and *Coastal Mall*, the South Carolina Supreme Court reached different conclusions as to the proper approach in the context of a contract action. In *Salway* the court found that materials furnished by the plaintiff pursuant to contract constituted the subject of the action, *Salway*, 179 S.E. at 790, while in *Coastal Mall* the court found that the subject of the action was the plaintiff's main primary right to have the construction contract properly performed. *Coastal Mall*, 217 S.E.2d at 727.

*Salway* appears to be an anomaly in its holding that the materials furnished by the plaintiff, rather than the contract itself, are the subject of the action. In *Ophuls & Hill v. Carolina Ice & Fuel Co.*, 160 S.C. 441, 158 S.E. 824 (1931), the court found that the door closing statute did not prevent a foreign plaintiff from bringing an action on a South Carolina contract because the contract, rather than notes arising from the contract which

were executed and payable elsewhere, was the "subject of the action." *See also Knight*, 192 S.E. at 560. And in *Recreonics*, where the district court did not reach the question whether the subject of the action was situated in South Carolina, the court nonetheless noted that the subject of the action was likely the South Carolina contract. *Recreonics*, 638 F.Supp. at 758 n. 1.

Furthermore, *Salway* is distinguishable from this case. As the court noted in *Recreonics*, *Salway* "involved an action by a materials supplier to recover on a surety's bond, and was not an action to recover on the principal contract to construct the government hospital in New York," so that case is "not factually apposite to the instant case, which involves an action to recover on the principal contract." *Id.* at 758. As in *Recreonics*, the plaintiff in this case seeks to recover on the principal contract, so the contract rather than the goods is the subject of the action. Because Plaintiff's primary right is a contract which was not made or performed in South Carolina, the subject of the action is not located within this state.

### C. POLICY CONCERNS

This court's holding is consistent with the policy behind South Carolina's adoption of the door closing statute. In *Collins*, the district court noted two functions of the statute:

> First, it is intended to provide a forum for wrongs connected with the State while avoiding the resolution of wrongs in which the state has little interest. *Cox v. Lunsford*, 272 S.C. 527, 252 S.E.2d 918, 920 (1979) ... The second purpose of the "door-closing" statute is to "encourage activity and investment within the State by foreign corporations without subjecting it to actions unrelated to its activity within the State." *Rosenthal v. Unarco Indus., Inc.*, 278 S.C. 420, 297 S.E.2d 638, 641 (1982).

*Collins*, 901 F.Supp. at 1044.

To accept Plaintiff's argument that simply because the goods were temporarily located in South Carolina, the door closing statute should not apply, would literally eviscerate

the door closing statute, the result of which could theoretically convert every truckload of goods that traverses I–26 or I–95 into a basis for jurisdiction in the courts of South Carolina. The public policy behind the adoption of the door closing statute is to prevent litigants with no connection with South Carolina from clogging our court system with such transient suits. Just because South Carolina provides a conduit for the passage of goods should not allow parties with no other connection to this state to utilize the scarce resources of the South Carolina court system.

First, South Carolina has little interest in resolving an action whose only connection with this state is the fact that Charleston provides the port of entry for the goods identified in the contract. The "wrong" alleged in the complaint was not committed in this state, and will not have its effect here. Second, a finding that the door closing statute does not bar this action would serve as a disincentive to foreign corporations' activity within this state. The use of South Carolina ports would be discouraged if, any time goods passed through Charleston, their buyer or seller could be sued in South Carolina even though the parties are not citizens of this state and the contract is to be performed elsewhere. Nonresident plaintiffs should be encouraged to bring suit in a forum more connected to the underlying action, with more of an interest in its outcome.

## II. BRIGHT TEXTILES v. GLENNON–BITTAN

This companion case arises out of the same facts as those discussed above. Bright Textile Mills is the Pakistani manufacturer of the goods imported by California Buffalo for sale to Glennon–Bittan. Bright brought this suit, alleging that once a dispute arose between California Buffalo and Glennon–Bittan concerning the goods to be manufactured by Bright, Glennon–Bittan contracted directly with Bright for the purchase of the same goods. Bright claims that Defendant Glennon–Bittan breached its contract with Bright once the imported goods arrived in Charleston on their way to Defendant's place of business in Farmville, North Carolina.

As in the previous case, neither party is a South Carolina citizen. Therefore, the door closing statute bars this action unless the cause of action arose here or the subject of the action is located here. S.C.Code Ann. § 15–5–150. Again, the contract between the parties is not to be performed in South Carolina, because the goods are to be delivered in North Carolina to Defendant's place of business. And again, the only connection with South Carolina alleged in the complaint is that some of the goods which are identified in the contract were located at the port of Charleston at the time the complaint was filed. This court finds that South Carolina's door closing statute bars this action for the same reasons it finds that statute bars the case brought by California Buffalo. The cause of action did not arise in South Carolina, and the subject of the action is not located here.

### III. CONCLUSION

For the foregoing reasons it is therefore,

**ORDERED,**

that these cases be **DISMISSED** *without prejudice.*

**AND IT IS SO ORDERED.**