TUTTLE DOZER WORKS,
INC., Plaintiff,

v.

GYRO–TRAC (USA), INC.; Gyro–Trac,
Inc.; Gyro–Trac West Coast, Inc.;
Usitech Nov, Inc.; Woodpecker Indus-
tries; Quebec, Inc.,; Usitech Nov
(2004) S.E.N.C.; Daniel Gaulreault;
and Walter Oliver, Jr. Defendants.

No. C/A2:06CV02182DCN.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 20, 2006.

Robert Lowe, Jr., Esq., Charleston, SC, for Plaintiff.

Jennifer Queen, Esq., Summerville, SC, Robert Culver, Esq., Charleston, SC, for Defendant.

## ORDER AND OPINION

NORTON, District Judge.

This matter is before the court on defendants Gyro–Trac, Inc., Gyro–Trac West Coast, Inc., Usitech Nov, Inc., Quebec, Inc., and Woodpecker Industries' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). This matter is also before the court on its *sua sponte* inquiry as to the application of the South Carolina door-closing statute, S.C.Code Ann. § 15–5–150 (2005). For the reasons stated below, defendants' motion is denied without prejudice.

## I. BACKGROUND

Plaintiff is a Florida corporation that engages in the business of clearing land. In March 2005, plaintiff bought a GT–25 brush-clearing machine from defendant Gyro–Trac (USA), Inc. for approximately $280,000. Prior to accepting delivery, plaintiff noticed that the GT–25 suffered from "track slippage." Gyro–Trac (USA) allegedly told plaintiff that the undercarriage slippage and related problems were normal and would cease after the machine was "broken in." Plaintiff thereafter accepted delivery. Since that time, according to plaintiff, the GT–25 has demonstrated significant and costly failures associated with all of its major systems, including the undercarriage components. Plaintiff has alleged that it provided Gryo–Trac (USA) with prompt notice of each malfunction. Plaintiff claims it has incurred out-of-pocket expenses and business losses because of the machine's failure, and it has asserted causes of action for fraud in the inducement, violation of the South Carolina Unfair Trade Practices Act, breach of contract, breach of warranty, and negligent misrepresentation.

The movants are entities organized and existing, either now or in the in the past, in Canada. In support of jurisdiction, plaintiff alleges that all of the defendants have marketed, demonstrated, sold, and serviced the GT–25 machines in this state. Plaintiff also alleges that the corporate defendants are interrelated business conduits of one another and that they act as a single enterprise to manufacture, sell, and service commercial land-clearing machines, equipment, and parts. Finally, plaintiff alleges that the corporate defendants are merely facades for the operations of defendant Daniel Gaudreault, or, at a minimum, that his actions should be imputed to the corporate defendants through agency principles. The movants argue they do not have sufficient contacts with South Carolina for this court to exercise personal jurisdiction, and that this action—as it pertains to them—should be dismissed. The parties have also submitted briefs, at the court's request, on what effect the South Carolina door-closing statute, S.C.Code Ann. § 15–5–150, has on this case.

## II. ANALYSIS

### A. Personal Jurisdiction

Plaintiff bears the ultimate burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* In that situation, "[t]he court must construe all relevant pending allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993). In South Carolina, personal jurisdiction is governed by the state's long-arm statute, S.C.Code Ann. § 36–2–803 (2005). The South Carolina Supreme Court has interpreted the long-arm statute to extend to the outer limits of constitutional due process. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005); *Meyer v. Paschal*, 330 S.C. 175, 181, 498 S.E.2d 635, 638 (1998). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell*, 363 S.C. at 491, 611 S.E.2d at 508 (citing *Moosally v. W.W. Norton & Co., Inc.*, 358 S.C. 320, 329, 594 S.E.2d 878, 883 (Ct.App.2004)).

Exercising specific jurisdiction does not comport with due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction comports with notions of "fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

Plaintiff argues that the movants have directly established minimum contacts with South Carolina. Plaintiff also argues that movants have established minimum contacts because of their agency relationship with Daniel Gaudreault, and alternatively because the movants were merely alter egos of the other defendants who admit minimum contacts. The Supreme Court has recognized since *International Shoe* that a corporation can act only through its agents and that those agents' actions can be imputed for purposes of determining minimum contacts. *See International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Moreover, personal jurisdiction over a corporate entity can be had based on the contacts of its subsidiaries only if the plaintiff is able to "pierce the corporate veil." *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–37, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir.1993).

These disputes are not ripe because the record is not developed enough to allow a decision on the issues. Plaintiff's arguments in support of personal jurisdiction are particularly fact-sensitive, demanding inquiry into the agency and business relationships among the various defendants. The record thus far contains: (1) an affidavit from Daniel Gaudreault; (2) photos of plaintiff's and a third party's GT–25s, indicating their manufacturers were Usitech Nov and Woodpecker Industries; and (3) documents obtained from the Quebec government that demonstrate some of the defendants were incorporated there. In sum, the record simply does not provide a basis for determining what role each de-

fendant played in the machine's manufacture, distribution, and service, nor for determining what the relationship between each defendant and its agents was—especially given the fact-intensive nature of the agency and corporate veil analyses.

■ Plaintiff has offered sufficient evidence of personal jurisdiction to allow discovery to proceed. The Fourth Circuit has stated that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md., Inc. v. Carefirst Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir.2003) (citing *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983)). In this case, plaintiff has offered more than mere speculation and conclusory assertions and, using even the bare evidence described *supra,* has presented a picture of the defendants' relationships that tends to support exercising personal jurisdiction over all or some of them. While some courts in these circumstances have permitted only limited discovery on the jurisdictional issue, *see Rhee Bros., Inc. v. Han Ah Reum Corp.,* 178 F.Supp.2d 525, 534 (D.Md.2001), the parties here may proceed with full discovery. Full discovery in this case is unlikely to be any more burdensome than limited discovery because many of the issues raised in this motion could be relevant to the substantive causes of action, three of the defendants have not challenged jurisdiction, and many of the same actors will be involved regardless of the scope of discovery.

## B. The Door–Closing Statute

At the court's request, the parties have submitted briefs on the effect, if any, that the door-closing statute, S.C.Code Ann.

§ 15–5–150, has in this case. The statute provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
>
> (1) By any resident of this State for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C.Code Ann. § 15–5–150 (2005).

■ Plaintiff argues the door-closing statute does not apply in this case because the causes of action arose in South Carolina. Plaintiff alternatively argues that the door-closing statute no longer applies in federal court following the South Carolina Supreme Court's decision in *Farmer v. Monsanto Corp.,* 353 S.C. 553, 579 S.E.2d 325 (2003). Defendants argue the door-closing statute precludes some of the causes of action because they did not arise in South Carolina, and they argue *Farmer* does not change the federal courts' longstanding application of the door-closing statute in diversity suits.

In *Farmer,* the South Carolina Supreme Court considered whether the door-closing statute prevents plaintiffs from becoming members of a class action when the statute would otherwise prevent them from bringing suits on their own behalf. 353 S.C. at 555–56, 579 S.E.2d at 327. The supreme court first stated, overruling many prior cases, that section 15–5–150 does not affect subject-matter jurisdiction. *Id.* at 557, 579 S.E.2d at 328. Instead, the court stated that the statute affects only a party's capacity to sue, much like another door-closing statute, S.C.Code Ann. § 33–15–102.[1] *Id.* at 557, 579 S.E.2d at 327. In

---

**1.** That door-closing statute states in part, "A       foreign corporation transacting business in

concluding that the statute did not bar the class members' suits, the lower courts relied heavily on the Fourth Circuit's decision in *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993). *Id.* at 557, 579 S.E.2d at 328. The supreme court determined that *Central Wesleyan* was not instructive because section 15–5–150's plain language only addressed suits in the circuit courts, thereby requiring the conclusion that "the statute clearly does not apply to federal suits." *Id.* The supreme court ultimately held the statute precludes actions by class members who would otherwise be unable to bring suit on their own behalf. *Id.* at 559, 579 S.E.2d 325, 579 S.E.2d at 328.

Plaintiff asserts the South Carolina Supreme Court's statement that the door-closing statute "clearly does not apply to federal suits" is controlling in this case. It has been long held that federal courts sitting in diversity must apply section 15–5–150 unless countervailing federal interests preclude its application. *See, e.g., Cent. Wesleyan Coll.*, 6 F.3d at 186 n. 3; *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir.1980); *Bumgarder v. Keene Corp.*, 593 F.2d 572, 573 (4th Cir.1979) (per curiam); *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 63–64 (4th Cir.1965); *California Buffalo v. Glennon–Bittan Group,Inc.*, 910 F.Supp. 255, 256–57 (D.S.C.1996); *Grimsley v. United Eng'rs and Constructors, Inc.*, 818 F.Supp. 147, 148 (D.S.C.1993); *Recreonics Corp. v. Aqua Pools, Inc.*, 638 F.Supp. 754, 755–56 (D.S.C.1986); *Lightfoot v. Atlantic Coast Line R.R. Co.*, 33 F.2d 765, 765–66 (E.D.S.C.1929).

The issue after *Farmer* is whether the South Carolina Supreme Court's reinterpretation of section 15–5–150 as not af-

fecting subject-matter jurisdiction changes its application in federal court. Despite that court's statement to the contrary, the statute continues to apply in diversity suits. In *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), the United States Supreme Court addressed whether the *Erie* doctrine mandated application of a door-closing statute aimed at unregistered foreign corporations, which was similar to S.C.Code Ann. § 33–15–102(a), in the federal courts. The Supreme Court, in concluding that the statute applies in federal court, stated that "a right which local law creates but which it does not supply with a remedy is not right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state, he should likewise be barred in the federal court." *Woods*, 337 U.S. at 538, 69 S.Ct. 1235. To allow the suit to proceed in the federal courts when it could not in the state courts "would create discriminations against citizens of the State in favor of those who can invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that *Erie R. Co. v. Tompkins* was designed to eliminate." *Id.* The primary concern in *Woods* was therefore not whether the statute affected subject-matter jurisdiction, but whether the statute prevented a party's recovery in the state courts.

The Fourth Circuit's decision in *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir.1965) also requires the federal courts' continued application of the door-closing statute. After reviewing the Supreme Court's *Erie*-line of cases, including *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d

___

this State without a certificate of authority may not maintain a proceeding in any court in this State until it obtains a certificate of

authority." S.C.Code Ann. § 33–15–102(a) (2005).

953 (1958) and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Fourth Circuit provided three guidelines for applying *Erie:*

1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.

*Szantay*, 349 F.2d at 63–64.

*Szantay* addressed the same issue presented here: whether section 15–5–150 applies in the federal courts.[2] *Id.* at 62. *Szantay* was a wrongful death suit brought on behalf of deceased victims of an aviation accident. *Id.* The deceased purchased an aircraft in Nebraska from defendant Beech. He then flew the plane to Florida and then to South Carolina. During the stopover in South Carolina, the plane was serviced by Dixie Aviation Co. *Id.* The deceased then attempted to fly the plane from South Carolina to Chicago, but the plane crashed in Tennessee and all on board were killed. *Id.* Plaintiffs brought wrongful death suits on the victims' behalf against both Beech and Dixie in the Eastern District of South Carolina. *Id.* The plaintiffs and deceased victims were citizens of Illinois. *Id.* Beech, a corporation organized in Delaware with its principal place of business in Kansas, argued the door-closing statute precluded the plaintiffs from bringing suit in the South Carolina federal court. *Id.*

The Fourth Circuit held the door-closing statute applies in the federal courts unless countervailing federal interests preclude the statute's application. *Id.* at 64. First, using the three-question analysis quoted *supra*, the parties agreed that the statute was procedural and not substantive. *Id.* Second, the court of appeals determined that the right was one arising from Tennessee law (presumably because that is where the deaths occurred), thereby preventing a South Carolina procedural statute from being "intimately bound" with that right. *Id.* Third, however, the court of appeals determined that the statute would substantially affect the outcome such that it must be applied absent countervailing federal considerations.[3] *Id.* The

---

**2.** At that time, the door-closing statute was codified at S.C.Code Ann. § 10–214 (1962). Although now located at a different section, the statute's text has not changed.

**3.** The Supreme Court described the "outcome-determinative" test in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under *Hanna*, a state statute must be applied when it is "outcome determinative" in light of "the twin aims of *Erie*: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 467–68, 85 S.Ct. 1136. The door-closing statute is outcome determi-

native in this case given that it could wholly preclude recovery against certain defendants. The *Hanna* Court indicated that *Erie*'s forum-shopping concern is implicated when a state law would wholly prohibit recovery in the state courts. *Id.* at 469, n. 10. Not applying the door-closing statute in the federal courts would thus lead to forum-shopping in that a plaintiff's choice-of-forum decision would be determined at the outset according to the door-closing statute's effect in the case. Moreover, failing to apply the statute in federal court would be inequitable because it would allow plaintiffs who can bring their

court ultimately concluded that there were countervailing federal interests such that the door-closing statute did not apply in that case, particularly because Dixie could be served only in South Carolina and the policies underlying the joinder rules precluded the statute's application. *Id.* at 64–65.

*Szantay* and subsequent cases conducted their analyses on the assumption that the door-closing statute is jurisdictional. *See id.* at 63; *California Buffalo v. Glennon–Bittan Group, Inc.,* 910 F.Supp. 255, 256–57 (D.S.C.1996). However, the South Carolina Supreme Court's reinterpretation of the statute as not affecting jurisdiction does not alter *Szantay's* application in this case. *Erie* is not concerned with whether the state law is jurisdictional, but rather whether the state law is substantive or procedural—and even that distinction usually turns how the statute operates in practice and not on strict definitions. *See* Erwin Chemersinky, Federal Jurisdiction 316–17 (4th ed.2003); John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv. L.Rev. 693, 722–23 (1974). The door-closing statute operates the same today as when the Fourth Circuit considered the issue over forty years ago, despite the South Carolina Supreme Court's reinterpretation. Thus, absent countervailing federal interests, a federal court sitting in diversity must continue to apply S.C.Code Ann. § 15–5–150.

■ Like the personal jurisdiction issue, determining whether the door-closing statute precludes some of the causes of action in this case depends on a fact-sensitive analysis. When a contract is involved, the question for purposes of the door-closing statute is whether the contract was made or was to be performed in South Carolina. *See California Buffalo,* 910

F.Supp. at 257 (citing *Recreonics Corp. v. Aqua Pools, Inc.,* 638 F.Supp. 754 (D.S.C. 1986); *Carpenter v. American Accident Co.,* 46 S.C. 541, 24 S.E. 500 (1896)). Moreover, the door-closing statute does not preclude a suit when the "subject of the action" is located in South Carolina, an issue that similarly requires a factual analysis. *See id.* at 258. In this case, the record thus far contains little or no evidence from which the court can determine whether the door-closing statute precludes one or more of the plaintiff's causes of action. It would not be prudent to decide this issue at such an early stage in the proceedings, but to instead wait until after the parties have an opportunity to engage in discovery and gain a clearer picture of the facts.

## III. CONCLUSION

For the reasons stated above, it is therefore **ORDERED** the defendants' motion to dismiss for lack of personal jurisdiction is **DENIED** without prejudice.

**AND IT IS SO ORDERED.**

cases in federal court to recover while those

who cannot may be left without a remedy.