**Robert M. HARRIS, Appellant,**

v.

**DEERE AND COMPANY, Appellee.**

**No. 6983.**

United States Court of Appeals Fourth Circuit.

Argued May 24, 1955.

Decided June 13, 1955.

William L. Thorp, Jr., Rocky Mount, N. C. (C. H. Leggett, Tarboro, N. C., on brief), for appellant.

Hugh M. Dorsey, Jr., Atlanta, Ga. (Jones, Williams, Dorsey & Kane, Atlanta, Ga., Robert C. Howison, Jr., and Joyner & Howison, Raleigh, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal from an order, D.C., 128 F.Supp. 799 quashing return of service of summons and dismissing for lack of jurisdiction an action to recover damages on account of injuries sustained by plaintiff when a tractor manufactured by the defendant overturned on him. Plaintiff is a resident of North Carolina and defendant a manufacturing corporation of the State of Illinois. Liability on the part of defendant was asserted because of alleged negligence in the design of the tractor, which had been purchased from a local dealer to whom it had been sold by the John Deere Plow Company, a corporation of St. Louis, Missouri, a wholly owned subsidiary of defendant. The summons in the action was served on the John Deere Plow company, which was admittedly doing business in North Carolina, but service was quashed and the action dismissed on the ground that the defendant, Deere and Company, was not doing business within the state. The facts with respect to the relationship of Deere and Company and the John Deere

Plow Company were thus accurately and succinctly stated by the judge below:

"The defendant is the second largest company in the agricultural equipment business in the United States. Its charter empowers it to manufacture and sell agricultural machinery in any and all of the states and territories of the United States. It distributes the products of fourteen factories through twenty subsidiary corporations, all of which have 'Deere' or 'John Deere' in their corporate names. The subsidiary directly involved here, John Deere Plow Company of St. Louis, maintains a branch office in Atlanta, Georgia, which contracts with and sells tractors and other farm equipment to dealers in North Carolina for resale to users of such equipment.

"The defendant parent corporation owns and votes all of the stock of the subsidiary and elects its directors, a majority of whom are also directors or officers of defendant. The parent and subsidiary have the same president. Four of the subsidiary's nine officers are officers or directors of the parent. Through these officers and directors the parent completely controls and directs the policies and business of the subsidiary and integrates its activities into the entire Deere organization. The subsidiary is referred to in the parent's 1953 annual report to stockholders as one of its 'Branch Houses'.

"Despite the control exercised by the parent, the separate corporate entity of the subsidiary is observed. The subsidiary buys products of the parent and sells them to its dealers. The subsidiary buys some farm implements and equipment from firms other than the parent. The parent and subsidiary have their own separate employed personnel, keep separate books and accounts and file separate federal income tax returns. Combined financial statements of defendant and all of its subsidiaries are published in *its annual reports*. The percentage of dollar volume of farm equipment manufactured by the defendant and sold to its subsidiaries in 1954 was 93.1 and in 1953 was 93.5."

We think that the case was properly dismissed on the authority of Cannon Mfg. Co. v. Cudahy, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, which is directly in point. See also Peterson v. Chicago R. I. & P. R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79; Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; United States v. Scophony Corp., 333 U.S. 795, 813, 68 S.Ct. 855, 92 L.Ed. 1091; National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 439, 69 S.Ct. 726, 93 L.Ed. 779; Cape Fear Rys., Inc., v. Cobb, 190 N.C. 375, 129 S.E. 828; Radio Station WMFR v. Eitel-McCullough, 232 N.C. 287, 59 S.E.2d 779; Lambert v. Schell, 235 N.C. 21, 69 S.E. 2d 11. Appellant attempts to distinguish the Cannon case on the ground that it involved breach of contract, whereas the case at bar is for tort; but this is a distinction without a difference, having no relation to whether or not the corporation sued was doing business within the state. Reliance is placed on the holding in the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, to the effect that a corporation is amenable to suit where it has through its business operations such "minimum contacts" in the state that subjecting it to suit will not offend "traditional notions of fair play and substantial justice"; but unless the activities of the John Deere Plow Company are considered (and this is precluded by the decision in Cannon Mfg. Co. v. Cudahy) the defendant has no contacts whatever within the state upon which jurisdiction can be based.

Much can be said in support of the view that a manufacturer which distributes its product by selling it to a wholly owned and completely controlled subsidi-

ary, should, for purposes of jurisdiction in the courts, be held to be doing business wherever the subsidiary sells the product. The fiction of different corporate entities ought not permit the manufacturer, in such case, to avoid suit in the states where its product is being sold and where the wholly owned and controlled subsidiary is representing it just as truly as if it were an agent in the legal sense; and we would so hold if we felt ourselves at liberty to do so. It is not for us, however, to overrule or modify decisions of the Supreme Court; and, until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer.

Affirmed.