**FRITO–LAY, INC.**

v.

**The PROCTER & GAMBLE COMPANY,**
**and Procter & Gamble Distributing**
**Company.**

**Civ. A. No. CA 3–6671–E.**

United States District Court,
N. D. Texas,
Dallas Division.

July 18, 1973.

Stanley S. Crooks, Dallas, Tex., Stanton T. Lawrence, Jr., and John L. Sigalos, New York City, Richard A. Lochner, Dallas, Tex., for plaintiff.

Eugene Jericho, Dallas, Tex., George B. Finnegan, Jr., Jerome G. Lee, and Warren H. Rotert, New York City, for defendants.

## MEMORANDUM ORDER

MAHON, District Judge.

Plaintiff, Frito-Lay, Inc., has brought suit pursuant to 28 U.S.C. §§ 2201–02 (1970), seeking declaratory judgment of the invalidity and unenforceability of United States Patent No. 3,498,798 issued to The Procter & Gamble Company on March 3, 1970. The subject of the patent in question is,

> "a package for chip-type snack food products and a method of packaging the chips. . . . The chips used are of non-planar shape and are first formed into the desired curved shape in a uniform manner to permit the chips to be stacked one upon the other to form a grouped array and thereby minimize the void space therebetween. The chips are stacked one upon the

other with corresponding surfaces similarly oriented and are then placed in a substantially rigid, tubular container which is adapted to enclose the stack of closely packed chips. After being inserted into the tubular container, the latter is sealed closed by securing one or more ends thereto. Both the tubular container and the ends are fabricated from materials which are impervious to oxygen and water vapor to prevent the entrance of additional atmospheric oxygen and water vapor into the interior of the package which would rancidify the frying fat retained by the chips and result in the chips becoming stale." United States Patent No. 3,498,798 (March 3, 1970).

Frito-Lay urges that it has manufactured and sold a packaged chip-type snack food product encompassed within the above patent. Plaintiff also alleges that it has "embarked on the manufacture and acquisition of additional equipment and plant facilities for the manufacture of its aforesaid product," and that it has made financial arrangements and commitments to that end. In addition to the declaration that the patent is invalid and unenforceable, Frito-Lay further seeks a determination that its actions in manufacturing and selling a chip-type food product similar to that marketed by Procter & Gamble Company have not previously constituted, and will not in the future constitute, infringement.

This matter is now before the Court on defendants' motion to dismiss. Defendants, The Procter & Gamble Company (sometimes hereinafter P & G) and The Procter & Gamble Distributing Company (sometimes hereinafter Distributing Co.), urge that dismissal of this cause of action is warranted because, "Defendant The Procter & Gamble Company . . . is not amenable to service of process in Texas and has not properly been served with process in Texas. Consequently, this Court has not acquired *in personam* jurisdiction over P & G. P & G is an indispensable party to this action and therefore the action should not proceed." Defendants also contend that venue does not properly lie in the Northern District of Texas and, further, that there is a lack of subject matter jurisdiction in that the facts fail to show the existence of a justiciable controversy.

The Procter & Gamble Company is a corporation whose principal offices are located in Cincinnati, Ohio. It is primarily a manufacturer and distributor of household products.[1] Defendant Distributing Company is a wholly-owned subsidiary of The Procter & Gamble Company whose principal offices are also located in Cincinnati. Distributing Company is licensed to do business and is doing business in the State of Texas. The Procter & Gamble Company is not licensed to do business in Texas and does not maintain either a regular place of business or a registered agent for service of process in this state.

The Court is concerned at the outset with the issue of jurisdiction over Defendant The Procter & Gamble Company, the undisputed owner of the patent. Frito-Lay alleges that Distributing Co. is an alter ego for P & G and Frito-Lay has sought to effectuate service of process on the parent company through use of the Texas "Long Arm" statute.[2]

---

1. Annual Report of The Proctor & Gamble Co. and Subsidiaries—1972.

2. Art. 2031b captioned "Service of process upon foreign corporations and nonresidents" provides, in pertinent part, as follows:

    Failure to appoint agent; designation of Secretary of State as lawful attorney

    Section 1. When any foreign corporation, association, joint stock company, partnership, or non-resident natural person required by any Statute of this State to designate or maintain a resident agent, or any such corporation, association, joint stock company, partnership, or non-resident natural person subject to Section 3 of this Act, has not appointed or maintained a designated agent, upon whom service of process can be made, or has one or more resident agents and two (2) unsuccessful attempts have been made on different business days to serve process upon each of its designated agents, such corporation, association, joint stock company, part-

Specifically, plaintiff attempted to serve The Procter & Gamble Company by serving the registered agent of the subsidiary in Texas, and by thereafter mailing a copy of the summons and complaint to the parent company in Ohio. The plaintiff also undertook to serve process upon the Secretary of State of Texas, pursuant to Article 2031b, Sec. 3, Tex.Rev. Civ.Stat.Ann. (1964).

The Procter & Gamble Company, an indispensible party, would be subject to this Court's jurisdiction if (1) service upon the wholly-owned subsidiary was effective as service upon the parent corporation, or, provided the Secretary of State were a proper agent for services, (2) if service were made upon him in strict compliance with article 2031b.

■■ For there to be jurisdiction of The Procter & Gamble Company, it would be necessary to show that it had such "minimum contacts with [the forum] . . . that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Personal jurisdiction over a non-resident defendant requires "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). Where serv-

nership, or non-resident natural person shall be conclusively presumed to have designated the Secretary of State of Texas as their true and lawful attorney upon whom service of process or complaint may be made.

Engaging in business in state; service upon person in charge of business

Sec. 2. When any foreign corporation, association, joint stock company, partnership, or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants principal place of business by registered mail, return receipt requested.

Act of engaging in business in state as equivalent to appointment of Secretary of State as agent

Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such

business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

Doing business in state; definition

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Delivery of process to Secretary of State; forwarding copy

Sec. 5. Whenever process against a foreign corporation, joint stock company, association, partnership, or non-resident natural person is made by delivering to the Secretary of State duplicate copies of such process, the Secretary of State shall require a statement of the name and address of the home or home office of the non-resident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested.

ice of process has been undertaken in strict compliance with the Texas "Long Arm" statute, *in personam* jurisdiction over an out-of-state corporation will attach with reference to acts wherein such corporation has either engaged in or done business in Texas or where such corporation has committed a tort in this state. Art. 2031b § 4, Tex.Rev.Civ.Stat. (1964).

■ The Court notes that, "as a general rule, the relationship of parent corporation and subsidiary corporation is not of itself a sufficient basis for subjecting the non-resident parent corporation to the jurisdiction of the forum state." 2 Moore's Federal Practice, ¶ 4.25 [6] at 1174 (2d ed. 1970). In Cannon Manufacturing Company v. Cudahy Company, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the Supreme Court addressed itself to a similar problem. There, the plaintiff, a North Carolina company brought suit in that state against a Maine corporation for breach of contract. Service of process was attempted to be made upon the local agent of an Alabama corporation that was a wholly-owned subsidiary of the parent company designed to be an instrumentality for the marketing of the parent's products. In order to sustain service, the plaintiff undertook to establish identity between the parent corporation of Maine and the Alabama corporation whose agent was present in North Carolina. In affirming the trial court's dismissal of the action for lack of jurisdiction, the Supreme Court stated:

"Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations." 267 U.S. at 335, 45 S.Ct. at 251.

The Court went on to state that the parent company,

"For reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central Bank, 261 U.S. 171 [43 S.Ct. 311, 67 L.Ed. 594]. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. . . . [T]hat such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409–11 [23 S.Ct. 728, 47 L.Ed. 1113]; Peterson v. Chicago, Rock Island and Pacific Ry. Co., 205 U.S. 364 [27 S.Ct. 513, 51 L.Ed. 841]; and Peoples Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 87 [38 S.Ct. 233, 62 L.Ed. 587]. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The *corporate separation, though perhaps merely formal, was real.* It was not pure fiction." (emphasis added) 267 U.S. at 336–337, 45 S.Ct. at 251.

This Court has no reason to believe that the rule of Cannon v. Cudahy is not still controlling where applicable. Accordingly, there are at bar either two separate and distinct corporate entities

under *Cannon,* or there is but one which is doing business in this forum. If there are two under *Cannon,* that decision dictates that the parent is not present and service upon the subsidiary would not be service upon The Procter & Gamble Company, and further, that the actions of the subsidiary could not be imputed to the parent for the purposes of showing that the parent was doing business in this forum.

The matters before the Court reflect that four of the seventeen directors of The Procter & Gamble Company also sit on the five-man board of directors of the subsidiary. The Procter & Gamble Company has twenty-nine officers. Fifteen of those officers comprise the corporate officers for the subsidiary company. The affidavit of the Vice President of Corporate Affairs of The Procter & Gamble Company who is also a director of the Procter & Gamble Distributing Company, recites with reference to all P & G subsidiaries that,

"Each of the aforementioned subsidiary corporations has its own Board of Directors, officers and employees which determine its policies and carry on its business. Certain officers of The Procter & Gamble Company also serve as officers or directors of some of the subsidiary companies. The records of transactions of each of these corporations are set forth on its own books of account and records. The general business policies of the subsidiary corporations are subject, by virtue of its stock ownership, to ultimate review by The Procter & Gamble Company, and that company is informed of important actions taken by the managements of the subsidiary companies. However, the subsidiary corporations enjoy independent responsibilities for the management of their respective business (sic) including control over day-to-day operations."

The matters urged in support of the proposition that the subsidiary is merely an alter ego are, for the most part, statements appearing in the Annual Report of Procter & Gamble Company and its subsidiaries for the year 1972 and in a preliminary prospectus filed with the Securities and Exchange Commission on April 26, 1972, in relation to a proposed issue of $100,000.00 in "sinking fund debentures due May 15, 2002." In those instruments references appear with regard to consolidated earnings reports and combined figures reflecting the total number of personnel employed by the parent and its subsidiaries. Also advanced is a statement in the Prospectus with reference to the circumstances in which restrictions shall apply to secured debts incurred, assumed or guaranteed by "the Company or any Domestic Subsidiary." While such statements are to be considered with reference to the issue now before the Court, those which have herein been advanced are not such that they persuade the Court that the strictures of Cannon v. Cudahy are to be disregarded.

For this Court to say that plaintiff's burden herein has been sustained on the statements appearing in the Prospectus and the Annual Report which are of record would require this Court to conclude, in reality, that *Cannon* is of no force and effect.[3] While I am inclined to concur with the statement of Chief Judge Murrah of the Tenth Circuit in Steinway v. Majestic Amusement Company, 179 F.2d 681, 684 (1949), cited in Flank Oil Company v. Continental Oil Company, 277 F.Supp. 357, 363 (D.Colo. 1967) that "It may be that the more realistic philosophy of the later cases will eventually lead to the recognition of these acts [ownership and voting of majority stock] as legally sufficient to sustain asserted jurisdiction over the non-

3. Shortly after International Shoe was decided, the Supreme Court, though given the opportunity to modify the rule in *Cannon,* left it and similar decisions "untouched." United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

resident corporation," it is not for this Court,

> "however, to overrule or modify decisions of the Supreme Court; and, until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer." Harris v. Deere & Company, 223 F.2d 161 (4th Cir. 1955); Goldrick v. D. M. Pictor Company, 56 F.R.D. 639 (E.D. Va.1971).

██ The facts which have herein been adduced do not satisfy this Court that plaintiff has made a prima facie showing of actual control of the internal affairs of the subsidiary by the parent.[4]

The authorities advanced by plaintiff in support of the service attempted upon P & G through its subsidiary are not herein controlling. In Cannon v. Cudahy express mention was made of the fact that no statutory provision had been enacted by Congress whereby "a corporation of one State shall be amenable to suit in the Federal Court for another State in which the plaintiff resides whenever it employs a subsidiary corporation as the instrumentality for doing business therein.[5] That feature of Cannon was distinguishable from the cases such as United States v. Scophony Corporation of America, supra, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), which arose in the context of alleged violations of antitrust statutes. See Flank Oil Company v. Continental Oil Company, *supra,* 277 F.Supp. 357 (D. Colo.1967); K. J. Schwartzbaum, Inc. v.

Evans, Inc., 44 F.R.D. 589 (S.D.N.Y. 1968). In *Scophony* the Supreme Court held that in enacting Section 12 of the Clayton Act, 15 U.S.C. § 22, Congress intended to create venue and liability to service of process within a district wherein an occurrence which was allegedly in violation of the antitrust laws took place. There the Court noted previous decisions wherein it had "made effective Congress' remedial purpose," with reference to Section 12 of the Clayton Act and had thereby "relieved persons injured through corporate violations of the *antitrust laws* from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters *defeat* or delay the retribution due." (emphasis added) 333 U.S. at 808, 68 S.Ct. at 862. Moreover, as has previously been noted, the Supreme Court in *Scophony* noted that with reference to Section 12 of the Clayton Act and alleged antitrust violations,

> "Such a continuing and far-reaching enterprise is not to be governed in this respect by rules evolved with reference to the very different businesses and activities of *manufacturing and selling.* Nor, what comes to the same thing, is the determination to be made for such an enterprise by itemizing it into minute parts or events, in disregard of the actual unity and continuity of the whole course of conduct, by the process sometimes applied in borderline cases involving manufacturing and selling activities.

For present purposes *those decisions may be left untouched* for the

4. Compare Bland v. Kentucky Fried Chicken Corp., 338 F.Supp. 871 (S.D.Tex.1971); see also Atwood Hatcheries v. Heisdorf and Nelson Farms, 357 F.2d 847 (5th Cir. 1966) (foreign corporation held amenable to process in that franchisees doing business in Texas).

5. This action is brought for declaratory judgment relief. The venue statute relating to patent infringement, 28 U.S.C. § 1400 (1970), would therefore not apply. See 1 Moore's Federal Practice, ¶ 0.144 [9] at 1626 (2d ed. 1970).

**250**

facts and situations in which they have arisen and to which they have been applied." (emphasis added) 333 U.S. at 817, 68 S.Ct. at 866.

In considering questions of jurisdiction of defendants not present within a state, it has been said that due process demands that the maintenance of a suit "not offend 'traditional notions of fair play and substantial justice'" International Shoe Company v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. at 158. Needless to say, some imprecision inheres in those terms as well as in their application. This Court observes that among those cases which have sought to distinguish themselves from the rule of *Cannon* are such as Tokyo Boeki (U.S.A.), Inc. v. S. S. Navarino, 324 F.Supp. 361 (S.D.N.Y.1971), and Boryk v. de-Havilland Aircraft Company, 341 F.2d 666 (2nd Cir. 1965), wherein the defendant parent company was not a domestic corporation under the laws of the United States. There, jurisdiction was upheld through service on domestic subsidiaries with the Court stating, with reference to the advancement of alter ego arguments, that each case is to be decided on its own facts. The evidence adduced to support the alter ego-agency contentions raised in each of those cases was more supportive of the identity of parent and subsidiary than here and they are therefore distinguishable. In those cases where the parent company was an alien, a ruling that the subsidiary was not an agent or alter ego would have effectively precluded there being any remedy or relief available to the complaining party. This Court would not presume to speculate what part, if any, that fact might have played in the determinations made in those instances; it is just noted, without further comment, that such circumstances are not present in the matter now under consideration.

■ Service of process was also sought to be made upon the Texas Secretary of State. The rationale underlying the effort to thus effectuate service, unless made from an abundance of caution, is somewhat obscure. The Court, nevertheless, seeks to address itself to jurisdiction and service of process under Article 2031b § 3.

■ "[A]menability to service turns on whether a defendant has 'done business' or 'committed a tort' in the forum." Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228 (5th Cir. 1973). The Court has concluded above that the plaintiff has failed to show that P & G is "doing business" in Texas, and is left only with the possible premise that jurisdiction is founded upon tort theory. In this regard it is noted that decisions relating to strict liability or products liability are to be distinguished from the circumstances here present and are therefore not determinative. *See, e. g.*, Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969); Jetco Electronic Industries, Inc. v. Gardiner, *supra*, 473 F.2d 1228 (5th Cir. 1973). Further, while an action for patent infringement sounds in tort, Kinnear-Weed Corp. v. Humble Oil & Refining Co., 324 F.Supp. 1371, 1381 (S.D.Tex.1969), aff'd, 441 F.2d 631 (5th Cir. 1971), there is nothing before the Court to suggest that the *defendant* has committed all or any part of a tort either here or outside the state. Jetco Electronic Industries, Inc., *supra*, 473 F.2d n. 5 at 1232. This Court would therefore not have jurisdiction of the foreign corporation. Art. 2031b § 4, Tex.Rev.Civ.Stat.Ann. (1964).

Having concluded that plaintiff has not sustained his burden of making a *prima facie* showing of jurisdiction of The Procter & Gamble Company, an indispensable party to this cause action, and that defendants' motions with reference thereto are well-founded, this matter is herewith dismissed.