CONSOLIDATED ENGINEERING CO., INC.

v.

SOUTHERN STEEL COMPANY.

Civ. A. No. 80–0634–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 21, 1980.

Michael S. Shelton, Cohen, Abeloff & Staples, Richmond, Va., for plaintiff.

R. Harvey Chappell, Jr., Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendant.

MEMORANDUM

WARRINER, District Judge.

The parties are presently before the Court with respect to the motion of defendant Southern Steel Company (Southern Steel) to dismiss, pursuant to Fed.R.Civ.P. 12(b), this action filed by Consolidated Engineering Co., Inc. (Consolidated) for lack of *in personam* jurisdiction over Southern Steel as well as for insufficiency of service of process, and for the failure of Consolidated to qualify to transact business in Virginia. The primary issue before the Court is whether Southern Prison Company (Southern Prison), a wholly owned corporate subsidiary of Southern Steel, licensed to do business in Virginia, is an agent or "alter ego" of Southern Steel, such that service of process upon the registered agent of Southern Prison constitutes service of process on Southern Steel for the purpose of exercising *in personam* jurisdiction over the latter in Virginia.

I

Southern Steel, a Texas Corporation with its principal place of business in San Antonio, Texas, is engaged in the business of the

manufacture, sale, and installation of jail and detention equipment. Southern Prison is Southern Steel's wholly owned and controlled subsidiary and is licensed to transact business in the Commonwealth of Virginia. Consolidated is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

This action was originally filed by Consolidated as a Motion for Judgment in the Circuit Court of Henrico County, Virginia, in July 1980 under the style of *Consolidated Engineering Company, Inc. v. Southern Steel Company*, No. 80–L–302 (Cir.Ct. Henrico County, Va., filed 24 July 1980). The Notice of Motion for Judgment was directed to "Southern Steel Company a/k/a Southern Prison Company c/o Edward R. Parker, Registered Agent, 5511 Staples Mill Road, Richmond, Virginia."

The action arose over disputes between Southern Steel and Consolidated for subcontracting work performed by Consolidated at prison sites located in Louisville, Kentucky; Georgetown, Delaware; Huntington, Tennessee; Columbus, Ohio; Lexington, Oklahoma; and Concord, Massachusetts. The subcontracts were neither negotiated nor executed in Virginia, nor was any work to be performed thereunder in the Commonwealth. In short, the cause of action has no connection with the Commonwealth of Virginia.

Within time Southern Steel filed a petition to remove the action from the Circuit Court of Henrico County to this Court. Subsequently, Southern Steel filed a motion to dismiss, stating three grounds for its motion: first, that the service of the Notice of Motion for Judgment is insufficient to acquire personal jurisdiction over Southern Steel since service was made upon a person not an agent of Southern Steel; second, that this Court lacks *in personam* jurisdiction over Southern Steel in that Southern Steel is a citizen of the State of Texas, is not registered to do business in Virginia, has no agents in Virginia, has not transacted business in Virginia, and does not have sufficient minimum contacts with the Commonwealth to satisfy the requirements of

due process; and, third, that Consolidated has failed to qualify to transact business in Virginia and, pursuant to Va.Code § 13.1–119 (Repl.Vol.1978), cannot maintain an action in this Court.

The parties have submitted briefs on the issues, and the motion is ripe for disposition.

## II

Consolidated contends that service of process was effected upon and *in personam* jurisdiction was obtained over Southern Steel pursuant to Va.Code § 8.01–301(1) (Repl.Vol.1977). Section 8.01–301 provides in pertinent part as follows:

Service of process on a foreign corporation may be effected in the following manner:

1. By personal service on any officer, director or on the registered agent of a foreign corporation which is authorized to do business in the Commonwealth, and by personal service on any agent of a foreign corporation transacting business in the Commonwealth without such authorization, wherever any such officer, director or agents be found within the Commonwealth . . . .

Consolidated does not contend that Southern Steel has been "personally" transacting business in the Commonwealth. In fact, the uncontroverted evidence before the Court is that Southern Steel is not a citizen or resident of the Commonwealth, is not licensed or authorized to transact business in the Commonwealth, does not have a registered office or registered agent for service of process in the Commonwealth, does not have any officers or directors who are "found within" the Commonwealth, does no advertising in the Commonwealth, and is not otherwise doing business or transacting business within the Commonwealth, nor was Southern Steel performing any of these acts at the time this action was filed. Affidavit of Hull Youngblood, President of Southern Steel.

Rather, Consolidated contends that Southern Steel has been "vicariously" transacting business in Virginia through its

"agent," Southern Prison. In other words, Consolidated asserts that Southern Prison is the mere alter ego of Southern Steel for the purpose of transacting business in Virginia. Thus, even though Southern Steel is not personally transacting business in Virginia, Consolidated contends that Southern Steel is amenable to service of process in Virginia, pursuant to § 8.01–301(1), as a result of the activities within the Commonwealth of its wholly owned and fully controlled subsidiary, Southern Prison.

■ The burden of proof is on Consolidated to establish jurisdiction through proper service of process pursuant to the Virginia statute. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). This is true even where the action has been removed to federal court. *Top Farm Mills v. Sociedad Nationale Industric Applicazion Viscosa*, 428 F.Supp. 1237, 1241 (S.D.N.Y.1977); *Williams v. Modern Home Life Insurance Co.*, 260 F.Supp. 649, 652 (D.S.C.1966).

This case must be decided on a proper construction of § 8.01–301(1) of the Virginia Code, quoted above. Does the statute envision a wholly owned subsidiary, under the facts of this case, as being an agent for service of process on its absent parent corporation? Unfortunately, the Supreme Court of Virginia has not passed on the question. This Court must look elsewhere for guidance.

An appropriate starting place is with *Cannon Mfg. Co. v. Cudahy Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), upon which case Southern Steel relies heavily for its motion to dismiss. *Cannon* is often cited for the general rule that the mere fact that a wholly owned subsidiary corporation is "present" or "doing business" in the forum State is an insufficient basis for invoking *in personam* jurisdiction over a non–resident parent corporation, not otherwise present or doing business in the forum.

*Cannon* involved a breach of contract suit filed by the plaintiff, a North Carolina corporation, in that State against Cudahy Packing Company, a Maine corporation. Domestic service of process was had on Cudahy of Alabama, Inc., a wholly own subsidiary of Cudahy, and the instrumentality used to market Cudahy products in North Carolina. Service was not otherwise effected upon the parent. The Supreme Court examined the relationship between the parent and subsidiary at length:

> The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the state; but it does not do so as defendant's agent. It buys from the defendant and sells to dealers. In fulfilment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers; and from them the Alabama corporation collects the purchase price. Through ownership of the entire stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all aspects, observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws.

*Cannon, supra,* 267 U.S. at 335, 45 S.Ct. at 250.

Despite the identity of interest and complete control which the parent exercised over the subsidiary, the Supreme Court held that the formal corporate separation was sufficiently real to avoid personal jurisdiction over the parent in North Carolina. In this regard, the Supreme Court stated:

> The defendant wanted to have business transactions with persons resident in

North Carolina, but, for reasons satisfactory to itself, did not chose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. *Bank of America v. Whitney Cent. Nat. Bank, supra* [261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594]. It preferred to employ a subsidiary corporation. *Congress has not provided that a corporation of one state shall be amenable to suit in the Federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein.* Compare *Lumiere v. Mae Edna Wilder*, 261 U.S. 174, 177, 178 [43 S.Ct. 312, 313, 67 L.Ed. 596]. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by *Conley v. Mathieson Alkali Works*, 190 U.S. 406, 409–411 [23 S.Ct. 728, 47 L.Ed. 1113, 1115, 1116]; *Peterson v. Chicago, R.I. & P. R. Co.*, 205 U.S. 364 [27 S.Ct. 513, 51 L.Ed. 841]; and *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 87 [38 S.Ct. 233, 235, 62 L.Ed. 587, 590] Ann.Cas. 1918C, 537. In the case at bar, the identity of interest may have been more complete, the exercise of control over the subsidiary more intimate, than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction.[1]

*Cannon, supra*, 267 U.S. at 336–37, 45 S.Ct. at 215.

Under facts similar to those in *Cannon*, the Fourth Circuit concluded in *Manville Boiler Co. v. Columbia Boiler Co. of Pottstown*, 269 F.2d 600, 606–7 (4th Cir. 1959) (venue question under 28 U.S.C. § 1400(b)) and *Harris v. Deere & Co.*, 223 F.2d 161, 162

(4th Cir. 1955), that where formal separation of corporate identity between the parent and subsidiary is observed, a parent corporation cannot be said to be doing business within a State for purposes of jurisdiction, service of process, or venue merely because its wholly owned and controlled subsidiary is doing business there. After examining the relationship between the parent and subsidiary in *Harris*, the Fourth Circuit stated:

> [d]espite the control exercised by the parent, the separate corporate entity of the subsidiary is observed. ... The parent and subsidiary have their own separately employed personnel, keep separate books and accounts, file separate federal income tax returns.

*Harris v. Deere & Co., supra* at 162. *See also Goldrick v. D.M. Picton Co.*, 56 F.R.D. 639 (E.D.Va.1971).

Despite the holding in *Harris*, the Fourth Circuit expressed its reservations about the *Cannon* doctrine:

> Much can be said in support of the view that a manufacturer which distributes its product by selling it to a wholly owned and completely controlled subsidiary, should, for purposes of jurisdiction in the courts, be held to be doing business where the subsidiary sells the product. The fiction of different corporate entities ought not permit the manufacturer, in such case, to avoid suit in the states where its product is being sold and where the wholly owned and controlled subsidiary is representing it just as truly as if it were an agent in the legal sense; and we would so hold if we felt ourselves at liberty to do so. It is not for us, however, to overrule or modify the decisions of the Supreme Court, and, until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said

---

1. As noted in the italicized sentence, the Supreme Court in *Cannon* spoke of the absence of a congressional enactment. We are not here searching for such a provision because under Fed.R.Civ.P. 4(d)(7) Congress has provided for service of process "in the manner prescribed by the law of the state in which the district court is held...." Thus, the inquiry is focused upon

the State statute cited in the text to determine whether it should be construed to allow service on the absent parent through the subsidiary. In this connection *see Cannon, supra*, 267 U.S. at 336, 45 S.Ct. at 215: "The claim that jurisdiction exists is not rested on the provision of any state statute...."

that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer.

*Id.* at 162–63.

Other courts have expressed reservations about the continued strength of *Cannon* in jurisdictional analysis as a result of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.[2] For example, in *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978), the Court concluded

that alter ego principles [of *Cannon*] no longer play any proper role in the analysis of constitutional propriety of the exercise of jurisdiction properly invoked by service authorized by statute.

.    .    .    .    .

The Court finds *Cannon* to be limited in scope or modified in holding by *International Shoe* and its progeny. Reliance on the rule of *Cannon* is unsound when extraterritorial service is authorized by statute and when personal jurisdiction is predicated upon the due process standards of *International Shoe.*[3]

*Id.* at 490.

Judge Blatt, in *Roorda v. Volkswagenwerk, A.G.*, 481 F.Supp. 868, 879 (D.S.C. 1979), questioned not only the continued authority of *Cannon*, but also the vitality of the Fourth Circuit's decisions in *Harris* and *Manville*. The reason for Judge Blatt's concern with respect to *Harris* and *Manville* was the apparent conflict between those cases decided expressly under *Cannon* and the later Fourth Circuit opinion in *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 62 (4th Cir. 1965). *See also Rollins v. Proctor & Schwartz*, 478 F.Supp. 1137, 1146 n. 23 (D.S. C.1979).

In *Szantay*, service was had upon the defendant in two ways: by service through the Secretary of State pursuant to the South Carolina long–arm statute and by service on defendant's distributor in South Carolina pursuant to a statute permitting service on a foreign corporation by serving any agent thereof in South Carolina. In affirming the District Court's holding, 237 F.Supp. 393, the Fourth Circuit stated:

the extensive control and supervision exercised by Beech over its dealer, by reason of which Beech is deemed to have sufficient contacts with South Carolina, is sufficient to constitute that dealer the agent of Beech for service of process.

*Szantey v. Beech Aircraft Corp., supra,* 349 F.2d at 62 (footnote omitted). In *Szantey* neither *Cannon, Harris* nor *Manville* was mentioned by the Court.

In light of this lack of unanimity as to how, or whether, or when, *Cannon* should be applied, the Court is constrained to state its views on what *Cannon* did and did not decide, as well as the effect of *Cannon* in jurisdictional analysis today.[4]

*Cannon* did not decide whether the activities of a subsidiary in the forum State constitute sufficient minimum contacts with the parent to invoke personal jurisdiction over the parent pursuant to a State long–arm statute. Cases relying upon or distinguishing *Cannon* where the parent corporation is served pursuant to a long–arm statute, and where one of the contacts

2. *See, e. g., Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 296 (6th Cir. 1967); *Roorda v. Volkswagenwerk, A.G.*, 481 F.Supp. 868, 877–79 (D.S.C.1979); *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 490–511 (D.Kan.1978); *W. Clay Jackson Enterprises v. Greyhound Corp.*, 431 F.Supp. 1229, 1232 n.1 (D.Puerto Rico 1977); *Hitt v. Nissan Motor Co.*, 399 F.Supp. 838, 849 (S.D.Fla.1975). *See generally* 2 Moore's Federal Practice ¶ 4.25[6] (2d ed. 1980).

3. The Court notes at this point that criticism of *Cannon's* "role in the analysis of constitutional propriety" is misplaced. *Cannon* does not involve a constitutional issue. *Cannon, supra,* 267 U.S. at 336, 45 S.Ct. at 251.

4. Such a statement of view, it is recognized, will not result in unanimity but it surely will not create a diversity. Confusion aplenty already exists.

with the forum State is the parent's relationship with its domestic subsidiary, have only tended to confuse the controversy surrounding the *Cannon* doctrine.[5] *Cannon* is simply inapposite to long–arm cases. The decision in *Cannon* was limited to an analysis of local service of process on a domestic subsidiary as a means of effecting process on an absent corporate parent.

In *Cannon* the Supreme Court set forth the simple rule of law that service on a domestic subsidiary did not constitute service on an absent corporate parent where corporate formalities were observed. The rule in *Cannon* did not turn on constitutional considerations of due process, as in *International Shoe*. Rather, the rule was based on principles of corporate separateness. If the parent and subsidiary were separate and distinct in their corporate affairs, then in the absence of a contrary statutory rule, service on the latter did not render the former amenable to personal jurisdiction.

The *Cannon* doctrine stems from the Court's tacit recognition of the fact that the laws of the various States of the union permit corporations to incorporate and utilize wholly owned and controlled subsidiaries so long as the corporate form is maintained. Such separate corporate identity has received universal acceptance in the legal community. The Supreme Court merely recognized and acknowledged its existence in the area of service of process. One may dislike the rule, but its logic is beyond dispute.

*International Shoe*, on the other hand, involved a different matter. There the Supreme Court was concerned with the fundamental fairness of invoking personal jurisdiction over a foreign corporation. That *Cannon* and *International Shoe* relate to different matters certainly suggests the conclusion that nothing in *International Shoe* worked to overrule the *Cannon* doctrine.

This is not to say that the rule in *Cannon* is immutable. The Virginia General Assembly could easily overcome the rule by enacting a statute permitting service upon a domestic subsidiary for the purpose of invoking *in personam* jurisdiction over a foreign corporate parent with respect to domestic disputes. No one could reasonably contend that such a statute would offend the concept of due process. The question here is, has the General Assembly, in enacting § 8.01–301(1), created such a rule. Since the Supreme Court has not altered its decision in *Cannon*, this Court is bound to recognize *stare decisis* in construing the reach of the Virginia statute.

### III

This brings the Court to the consideration of § 8.01–301(1), under which Consolidated has attempted to invoke jurisdiction over Southern Steel by serving the registered agent of its domestic subsidiary, Southern Prison. As previously noted, § 8.01–301(1) provides that personal service may be had on any foreign corporate transacting business in the Commonwealth by service upon any agent of the corporation found within the Commonwealth. Under such a statute, the analysis is two–fold. First, the Court must determine whether Southern Prison is, in fact, the agent or alter ego of Southern Steel for the purpose of receiving service of process under the *Cannon* doctrine. This determination will be controlled by whether the corporate separation between the parent and subsidiary has been maintained. Secondly, if Southern Prison is the agent of Southern Steel, the Court must determine whether the exercise of personal jurisdiction over the latter is consistent with the "traditional notions of fair play and substantial justice" under *International Shoe* and its progeny.[6]

5. *See, e. g., Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1977) (Nevada long–arm statute); *Indian Coffee Corp. v. Procter & Gamble Co.*, 482 F.Supp. 1098 (W.D. Pa.1980) (Pennsylvania long–arm statute); *Energy Reserves Group, Inc. v. Superior Oil Co., supra* (Kansas long–arm statute); *Stoer v.*

*American Honda Motor Co.*, 429 F.Supp. 763 (D.Neb.1977) (Nebraska long–arm statute).

6. In *International Shoe* the Supreme Court set forth its minimum contacts test as follows: due process requires only that in order to subject a defendant to a judgment in person-

## A.

Consolidated contends that, "Southern Prison Company is completely controlled in the conduct of its business and in the establishment of its policies and is the means by which Southern Steel Company does business in the Commonwealth of Virginia." Consolidated views the degree of control exercised by Southern Steel over Southern Prison as the most important factor for establishing an alter ego relationship.

In attempting to develop a factual basis for an alter ego theory, Consolidated relies heavily upon the transcript of a separate action filed against Southern Prison in the Circuit Court of Henrico County, Virginia, regarding the construction of the Henrico County jail project. *Consolidated Engineering Company, Inc. v. Southern Prison Company*, No. 79–L–300 (Cir.Ct. Henrico County, Va., 19 June 1980).[7] As an example of the degree of control exerted by Southern Steel over its subsidiary, Consolidated refers to the testimony of one William R. Race. Mr. Race testified that in his capacity as Director of Field Operations for Southern Steel, he was the immediate superior over James Burleson, an employee of Southern Prison and a project manager for Southern Steel. Mr. Burleson reported directly to Mr. Race. Tr. 60.

There is ample authority for Consolidated's argument. For example, in *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292 (6th Cir. 1964), the Court stated that foreign corporations are amenable to the personal jurisdiction of local courts be-cause of the local activities of subsidiary corporations where "the parent has exercised an undue degree of control over the subsidiary." *Id.* at 296 (footnote omitted). In *Fisher v. First National Bank of Omaha*, 338 F.Supp. 525, 529 (S.D.Iowa 1972), the court declared that:

> the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation.

In addition, the Court in *Stoehr v. American Honda Motor Company, Inc.*, 429 F.Supp. 736, 766 (D.C.Neb.1977), noted that:

> where the parent company has complete control over the subsidiary, conducting its business and controlling its policies ... [or where the subsidiary] is a mere adjunct and instrumentality of the parent ... [or] if a subsidiary corporation is merely a "dummy" by means of which the parent corporation does business in the state, service on the subsidiary would bind the parent. Fletcher Cyclopedia of Corporations, Section 877 3 at pp. 527–528. (Citations omitted.)

*See also Lakota Girl Scout Council v. Harvey Fund–Raising Management, Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (where a subsidiary "is so controlled by the parent as to justify disregard of the separate entity[,] jurisdiction over the subsidiary will support jurisdiction over the parent.")

---

am, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

. . . . .

It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

. . . . .

But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. 326 U.S. at 316, 319, 66 S.Ct. at 158.

7. Reference to the transcript in this action is by Tr. ——."

In *Cannon*, however, the Supreme Court recognized that the subsidiary was Cudahy's "instrumentality" employed to market Cudahy products within North Carolina and that

> [t]hrough ownership of the entire capital stock and otherwise, the defendant dominates the Alabama Corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states.

*Cannon, supra*, 267 U.S. at 335, 45 S.Ct. at 250. Without blinking at these facts the Supreme Court declared that where corporate formalities were in all respects observed, service upon the subsidiary does not qualify as service upon the parent.

> [T]he identity of interest may have been more complete, and the exercised control over the subsidiary more intimate, than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction.

*Cannon, supra*, 267 U.S. at 336–37, 45 S.Ct. at 251.

Thus, the test under *Cannon* is not the degree of control over the subsidiary by the parent. No degree of control can be greater than "immediately and completely." Whether the control is "undue" or not, the factual question is whether the subsidiary and the parent keep their corporate operations distinct and separate. As the Fourth Circuit noted in *Manville Boiler Co. v. Columbia Boiler Co., supra*:

> If the rule of [Cannon] unduly emphasizes the form in which related corporations cast their intercorporate transactions and minimizes the control exercised by the one over the other, the rule, nevertheless, is well established.[8]

*Id.* at 606. *See also Rollins v. Proctor & Schwartz*, 478 F.Supp. 1137, 1146 (D.S.C. 1979) ("the rule of *Cannon Mfg. Co.* exalts form over substance. As long as the two corporations maintain formal corporate separateness 'in all respects,' the *de facto* control of one by the other does not justify piercing the corporate veil").

In light of *Cannon* this Court is confounded by other courts' consideration of the *degree* of control in determining whether the subsidiary is the agent or alter ego of the parent. This Court refuses to follow the lead of those courts which have attempted to modify or, in effect, overrule *Cannon* by the use of buzz words or phrases such as "undue degree of control," "so organized and controlled," "mere instrumentality or adjunct," and "complete control." Therefore, the Court, under *Cannon*, is not concerned with the degree of control exerted by Southern Steel over Southern Prison so long as corporate formalities are observed between the two.

In this regard, the most cogent evidence before the Court is the affidavit of Hull Youngblood, President of Southern Steel, which affidavit reads in pertinent part as follows:

> 6. ... Southern Steel Company does not do business under the trade name or assumed name of "Southern Prison Company" and it is not "also known as" Southern Prison Company in Virginia or in any other state.

> 7. The Southern Prison Company is a separate and distinct corporation, duly organized under the laws of the State of Texas, with its principal place of business at San Antonio, Texas and its capital stock is owned by Southern Steel Company. Southern Prison Company maintains entirely separate and independent financial records, ledgers, and bank accounts; files tax returns; maintains separate records of contracts performed; and conducts its corporate affairs through officers and directors, as required by the law

---

8. As is shown from the quoted portion of *Cannon, supra*, 267 U.S. at 335, 45 S.Ct. at 250, the Court in *Cannon* did not "minimize" the control exercised by a parent over a subsidiary. It fully recognized the domination by the parent. It nevertheless laid down the rule.

of Texas. While the Southern Prison Company is licensed to do business in Virginia, where it has a registered agent, it is not a party to any of the subcontracts sued upon, and is not a party to this action.

Consolidated has not attempted to refute by affidavit or otherwise the sworn statement of Mr. Youngblood. Thus, the Court has no reason to question the truthfulness of Mr. Youngblood's affidavit.

Instead, Consolidated relies on the testimony of Mr. Race in *Consolidated Engineering Co. v. Southern Prison Co., supra,* for the contention that "Southern Prison Company is a corporation that has common ownership, or common directors and ownership by Southern Steel...." Brief pp. 2–3. In fact, Mr. Race testified that "Southern Prison is a *separate* corporation that has a common ownership, or common directors and ownership in Southern Steel...." Tr. 59 (emphasis added). *Cannon* is indistinguishable on this point.

In further support of its alter ego argument, Consolidated contends that Southern Prison transacts essentially the same business in Virginia as Southern Steel transacts in other jurisdictions and that the only reason for the name distinction is that the name "Southern Steel Company" was not available in Virginia. *See* Tr. 59. In *Cannon,* however, the Supreme Court recognized that the "corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws...." *Cannon, supra,* 267 U.S. at 335, 45 S.Ct. at 250. The Court also pointed out that Cudahy's sales practices in North Carolina were indistinguishable from its sales practices in other states except that in North Carolina a corporate subsidiary was used instead of a "selling branch or department" as in other states. *Cannon, supra,* 267 U.S. at 335, 45 S.Ct. at 250. Accordingly, whatever the reasons Southern Steel had for separate incorporation, and however it conducted its business in other states, the Court does not consider these factors pertinent to the issue here.

Consolidated also contends that Southern Steel and Southern Prison are so closely connected in identity that defense witnesses and defendant's attorney made no distinctions between the two corporations during the trial of *Consolidated Engineering Company, Inc. v. Southern Prison Company, supra.* In response to this contention, Southern Steel has brought to the attention of the Court a brief filed by Consolidated on 15 April 1980 in the same case, in which brief Consolidated stated at page 2:

> The Court should note that each of the subcontracts sought to be added to the defendants' [Southern Prison Company's and Traveller's Indemnity Company's] counterclaim are between the plaintiff [Consolidated Engineering Company] and Southern Steel Company, not Southern Prison Company. There is no allegation that the subcontracts have been assigned from Southern Steel Company to Southern Prison Company. *Rather, both are loosely referred to as "Southern." The present action brought by the plaintiff in this Court involves only Southern Prison Company.* (Emphasis added).

It is apparent to the Court that Consolidated tacitly approved of the interchanging of corporate names in the aforementioned trial, so long as it was understood that Southern Steel and Southern Prison were in fact separate corporations with separate contracts with Consolidated. Thus, the fact that the corporate names were used interchangeably by defense witnesses, the defendants' attorney, as well as Consolidated, in an unrelated law suit, does not indicate that Southern Prison is the agent of Southern Steel for the purpose of receiving service of process within the Commonwealth. Indeed, observing in testimony, arguments, and briefs the niceties of corporate identity throughout such a trial would have been a minor miracle.

As further evidence of the close nexus between Southern Steel and Southern Prison, Consolidated submits a letter dated 3 September 1980 from William R. Race, Field Director for Southern Steel, to Consolidated, stating that Southern Steel ex-

pected to be reimbursed for costs entailed in alleviating a defect in the work done at the Henrico County jail project. Consolidated argues that "[t]his letter is further evidence that although Southern *Prison* Company was the official name used for contractual obligations with reference to the Henrico County project, in fact, Southern *Steel* Company undertook the project, completed the project, and bore full responsibility for the project."

Consolidated's argument notwithstanding, Consolidated contracted with Southern Prison, rather than Southern Steel, with respect to the Henrico County jail project. When Consolidated filed suit with reference to that matter in the Circuit Court of the County of Henrico, Virginia, it named Southern Prison and not Southern Steel as a defendant. *Consolidated Engineering Co. v. Southern Prison Co., supra.* The 3 September letter shows that Southern Steel was concerned about the financial interests of Southern Prison. As Southern Prison is the wholly owned subsidiary of Southern Steel, the latter's concern would not be unexpected.

■ The Court finds that Consolidated has not carried its burden of proving that service of process on Southern Prison is the equivalent in law to service of process on Southern Steel. Accordingly, the Court rules that service of process on the registered agent of Southern Prison did not constitute effective service on Southern Steel under Va.Code § 8.01–301(1). As a result, this Court is unable to exercise personal jurisdiction over Southern Steel.

### B.

Having decided that Southern Steel has not been served with process, it is not necessary for the Court to decide whether Southern Steel has sufficient minimum contacts with the Commonwealth to justify the exercise of personal jurisdiction under the standard of *International Shoe.* Without deciding the issue, the Court notes that the nexus between the parties, the litigation and the forum vaporizes upon even casual examination. Consolidated and Southern Steel are not licensed to do business in the Commonwealth of Virginia and neither party is purportedly "transacting business" in the Commonwealth. This action involves a contractual dispute concerning subcontracting work performed by Consolidated at six prison sites, none of which are located in Virginia. The subcontracts in question were not negotiated or executed in the Commonwealth. It is true that a business relationship of some description exists with respect to the Henrico County, Virginia, jail, but that work is in no way involved in this suit.

■ As a general proposition, when the plaintiff is a nonresident and its claimed injury, as in this case, does not arise in the forum State the contacts between the foreign corporation and the forum must be fairly substantial to invoke the exercise of jurisdiction over the corporation. *See Grevas v. M/V Olympic Pegasus,* 557 F.2d 65, 68 (4th Cir. 1977). In *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745 (4th Cir. 1971), the Fourth Circuit stated:

> If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'" F. James, Civil Procedure, 640 (1965). (Emphasis added.)

*Id.* at 748 (citations omitted). *See also Goldrick v. D.M. Picton Co.,* 56 F.R.D. 639, 642 (1971).

It cannot be argued that the Commonwealth of Virginia is " 'a community into whose business life [Southern Steel] ha[s] significantly entered as determined by the quality, substantiality, continuity, and systematic nature of its activities ....' " *Ratliff v. Cooper Laboratories, Inc., supra,* at 748, quoting from *Seymour v. Park, Davis & Co.,* 423 F.2d 584, 587 (1st Cir. 1970).

In this regard the following language from *International Shoe* is instructive:

> to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, *so far as those obligations arise out of or are connected with the activities within the state*, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

326 U.S. at 316, 319, 66 S.Ct. at 159 (emphasis added).

Thus, it would appear that Consolidated would fail under the due process as well as the *Cannon* test.

In addition, the Court is apprised of the fact that Consolidated filed a complaint on 3 January 1980 in the U.S. District Court for the Middle District of Tennessee, Nashville Division, regarding the same subject matter and claiming the same damages as in the action at bar. The contracts in question were negotiated and executed in Nashville, Tennessee. Consolidated is a Tennessee Corporation with its principal place of business in Nashville, Tennessee. The exercise of *in personam* jurisdiction over Southern Steel has not been questioned in the Tennessee forum. Thus, the Court's decision will not leave Consolidated without an appropriate forum to litigate its contractual dispute with Southern Steel.[9]

### IV

Southern Steel's final ground for its motion to dismiss is that Consolidated has not been qualified to transact business in the Commonwealth and, pursuant to Va.Code § 13.1–119 (Repl.Vol.1978), cannot maintain this action. Va.Code § 13.1–119 provides in pertinent part as follows:

**9.** In the extensive briefing Consolidated has never intimated why it wants to proceed in both forums.

No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.

Section 13.1–119 applies not only to State court actions, but also to diversity actions in federal courts sitting in Virginia. *See Rock–Ola Mfg. Corp. v. Wertz*, 249 F.2d 813, 814 (4th Cir. 1957); *Moore v. Northern Homes of Pa., Inc.*, 80 F.R.D. 278, 281 (W.D. Pa.1978).

Consolidated concedes that it has not been qualified to do business in Virginia. Consolidated contends, nevertheless, that the issue is whether it is "transacting business" in the Commonwealth so as to require it to procure a certificate of authority pursuant to Va.Code § 13.1–119. *See Continental Properties, Inc. v. Ullman Co.*, 436 F.Supp. 538, 539 (E.D.Va.1977). In this regard, Consolidated asserts that it is not transacting business in the Commonwealth of Virginia and has not transacted any business in the Commonwealth related to this action.

Southern Steel in its rebuttal brief did not address this assertion, and apparently is no longer willing to pursue this basis for dismissal. Accordingly, the Court expresses no opinion on the point.

An appropriate order shall issue.